GUY FARMER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Farmer v. Commissioner
Docket No. 19538-89
United States Tax Court
T.C. Memo 1994-342; 1994 Tax Ct. Memo LEXIS 342; 68 T.C.M. (CCH) 178; July 25, 1994, Filed *342 Decision will be entered under Rule 155. Guy Farmer, pro se. For respondent: Alan S. Kline. DAWSON
DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Chief Special Trial Judge Peter J. Panuthos pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Chief Special Trial Judge, which is set forth below. OPINION OF THE CHIEF SPECIAL TRIAL JUDGE PANUTHOS, Chief Special Trial Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax Year
Deficiency
Sec. 6653(a)(1)
Sec. 6653(a)(2)
Sec. 6661
1981
$ 74,207
$ 3,710
[1]
-- 1982
62,641
3,132
[1]
$ 15,660
Respondent *343 also determined that interest on all of the deficiencies shall be calculated pursuant to the increased rate of interest imposed under section 6621(c). The issues remaining for decision are: 1. Whether petitioner is entitled to deduct as a loss or receive as a credit for the taxable years 1981 and 1982 amounts he invested in the limited partnership Midcontinent Drilling Associates; 2. whether petitioner is liable for the additions to tax for negligence pursuant to section 6653(a)(1) and (2) for the taxable years 1981 and 1982; 3. whether petitioner is liable for the addition to tax for the substantial understatement of income tax pursuant to section 6661 for the taxable year 1982; and 4. whether petitioner is liable for increased interest pursuant to section 6621(c) for the taxable years 1981 and 1982. FINDINGS OF FACT Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner resided in Washington, D.C., at the time of the filing of the petition herein. Petitioner received a college and a law degree from the University of West Virginia. Since 1936, petitioner has *344 been practicing law, specializing in the field of labor law. Petitioner has been a partner in several law firms located in Washington, D.C., and was previously employed by the National Labor Relations Board (NLRB), also located in Washington, D.C., for several years. In 1979, Herman Feinsod (Feinsod), an investor, became interested in the formation of limited partnerships to invest in the oil and gas industry. In late 1980, Feinsod became the primary organizer and promoter of a limited partnership known as Midcontinent Drilling Associates (MCDA), which purportedly engaged in the oil and gas industry by utilizing a technology in drilling that involved a new piece of equipment referred to as the Terra-Drill. Samuel Simon (Simon) was the individual general partner and tax matters partner of MCDA from its inception through April 1985. MCDA employed the accounting firm of Laventhol & Horwath (LH) to provide auditing, accounting, and tax-related services to MCDA from 1980 through April 1985. MCDA provided an offering memorandum which set forth the anticipated tax losses each investing partner would incur on a per-unit basis. For the initial 4 years following the investment, a partner *345 could anticipate incurring a tax loss equal to approximately three times the amount of cash invested. Petitioner learned of the investment opportunity available in MCDA through Edward Koepenick (Koepenick), a tax shelter investment adviser. Koepenick emphasized the tax benefits in promoting this investment. Koepenick, who had promoted one other partnership involved in oil and gas, did not perform any independent research concerning this investment other than to speak informally to a few business associates and to attend a seminar presented by promoters of MCDA. In 1981, petitioner purchased four units in MCDA. Petitioner paid MCDA a subscription fee in cash in the amount of $ 50,000 in 1981 and executed four promissory notes. The first three notes payable in 3 succeeding years were in the amount of $ 50,000 each. The fourth note was in the amount of $ 400,000 payable in 1994. Petitioner paid off one of the notes in 1982 in the amount of $ 52,239.41 (principal was $ 50,000), and another note in the amount of $ 56,660 (principal was $ 50,000) in 1983. Thereafter, petitioner did not make payment on the remaining promissory notes. Koepenick received a commission for petitioner's *346 investment in MCDA. In pursuing the investment, petitioner did not rely upon Koepenick's advice; he instead relied upon his own experience and business judgment. Petitioner possessed some investment experience in partnerships involved in the oil and gas industry, but he did not possess any technical knowledge or expertise in the field of oil and gas drilling. Petitioner did not consult with experts in this field to evaluate the anticipated profitability of the MCDA investment. Nor did petitioner employ any independent agency to conduct such an investigation. At the time of his investment, petitioner did not know whether the Terra-Drill had been developed for commercial use. Petitioner relied almost exclusively on the partnership's offering memorandum when he decided to invest in MCDA. Subsequently, petitioner did not take an active role in reviewing the partnership documents such as the books, ledgers, or canceled checks to determine whether MCDA was incurring actual losses. Petitioner did not hire an outside agency to perform this review either. In a test case involving similar investments in this drilling venture, this Court held that MCDA was a tax shelter, the activities *347 of which were not engaged in with a profit objective, and that deductions, losses, and credits claimed with respect to the partnership were attributable to tax-motivated transactions within the meaning of section 6621(c). Webb v. Commissioner, T.C. Memo. 1990-556, remanded on another issue without published opinion 17 F.3d 398 (9th Cir. 1994). The parties agree that the partnership was not organized to engage in business for profit within the meaning of section 183 and was not organized to carry out the business purpose claimed in MCDA's offering material. In 1985, Simon pleaded guilty to embezzlement of funds from MCDA and similar partnerships. On October 2, 1986, some of the limited partners filed a class action suit against the promoters, attorneys, accountants, and others associated with the partnerships that purported to use the Terra-Drill. Many parties to the class action suit, including Feinsod, settled out of court. LH did not settle, and the case went to trial. A jury decided that LH was liable for damages for violation of Federal securities laws and common law fraud. For the taxable years 1980, 1981, and *348 1982, petitioner reported on his Federal income tax returns income from his practice of law in the amounts of $ 1,306,398, $ 1,233,376, and $ 475,747, respectively. On his 1981 and 1982 tax return, petitioner claimed, as his distributive share of the partnership's losses, $ 148,415 and $ 156,008, respectively. Respondent disallowed as a deduction the entire amount of loss associated with petitioner's investment in MCDA. According to respondent, the above losses were incurred in an activity not engaged in for profit and, thus, were not deductible under section 183. OPINION Petitioner claims that he should not be bound by our holding in Webb v. Commissioner, supra, because, among other things, he is not seeking a deduction for the entire loss claimed as his distributive share of the partnership cost. Rather, he seeks to claim as a deduction, or to receive as a credit, the amount of out-of-pocket expenses ($ 150,000) he incurred. Petitioner raises two alternative theories for entitlement. He claims he should be entitled to the $ 150,000 as a loss from a profit-seeking activity. In the alternative, petitioner invokes equity principles. He also *349 claims that he was not negligent in his investment in MCDA because he relied upon the advice of Koepenick and the financial information provided by LH. Respondent disagrees with all of petitioner's assertions. Profit-Seeking Loss
Section 165(a) provides that there shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. Petitioner claims that the loss from the investment in MCDA qualifies for a deduction under section 165(c)(1) or (2), which provides that an individual is entitled to a deduction for losses incurred (1) in a trade or business or (2) in any transaction entered into for profit, though not connected with a trade or business. [2] Deductions are a matter of legislative grace, and petitioner bears the burden of proving entitlement to all deductions claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). *350 It is clear that petitioner is not entitled to claim the out-of-pocket expenses as a loss under section 165(c)(1). This section requires that the loss be associated with a trade or business. Petitioner stipulated that MCDA was not organized to engage in a business for profit within the meaning of section 183; therefore, it was not in a trade or business within the meaning of section 162. See Hagler v. Commissioner, 86 T.C. 598, 621-626 (1986), affd. without published opinion sub nom. Dahlmeier v. Commissioner, 822 F.2d 63 (11th Cir. 1987); Surloff v. Commissioner, 81 T.C. 210, 232-239 (1983). Accordingly, any loss from the investment in MCDA cannot qualify as a section 165(c)(1) loss. To be deductible under section 165(c)(2), a loss must be incurred in a transaction entered into for profit, though not connected with a trade or business. Petitioner alleges that he, as an individual, engaged in the investment in MCDA with a profit motive. This Court, on several occasions, has indicated that a loss from a transaction will not qualify under section 165(c)(2) merely because an individual *351 investor possessed a subjective intent to profit. Omerza v. Commissioner, T.C. Memo. 1992-206 (citing Cherin v. Commissioner, 89 T.C. 986 (1987)), affd. without published opinion 999 F.2d 540 (6th Cir. 1993); Illes v. Commissioner, T.C. Memo. 1991-449, affd. per curiam 982 F.2d 163 (6th Cir. 1992). Rather, "A business transaction by its very nature must have economic substance, that is, a realistic potential for profit". Omerza v. Commissioner, supra (quoting Cherin v. Commissioner, supra at 993); see also Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985). This Court, in Webb v. Commissioner, supra, concluded that the investment in MCDA was a sham lacking economic substance, and petitioner agreed that MCDA was not organized to carry out the business purpose as proclaimed in the promotional material. Petitioner's *352 professed profit motive cannot supply the economic substance to this business transaction, and the loss does not qualify under the provisions of section 165(c)(2). See Cross v. Commissioner, T.C. Memo. 1992-715; Hauser v. Commissioner, T.C. Memo. 1992-641; Ward v. Commissioner, T.C. Memo. 1992-640; Ryall v. Commissioner, T.C. Memo. 1992-103, affd. without published opinion 999 F.2d 540 (6th Cir. 1993); Illes v. Commissioner, supra; Jackson v. Commissioner, T.C. Memo. 1991-250, affd. 966 F.2d 598 (10th Cir. 1992). Moreover, a transaction devoid of economic substance is not recognized for Federal taxation purposes even though the taxpayer incurred out-of-pocket expenses. Lerman v. Commissioner, 939 F.2d 44, 45 (3d Cir. 1991), affg. Fox v. Commissioner, T.C. Memo. 1988-570; Kims v. Commissioner, T.C. Memo. 1994-262. Equity Argument
In the alternative, *353 petitioner claims that, as a matter of equity, he should be entitled to claim as a deduction or receive as a credit the amount he actually invested in MCDA. According to petitioner, he is the victim of fraud committed by the promoters and accountants, among others, affiliated with MCDA, which resulted in a misuse of the funds he expended. In support of his argument, he referred to the guilty plea to embezzlement by Simon and the jury verdict awarded against LH. This Court is a court of limited jurisdiction. Sec. 7442; Woods v. Commissioner, 92 T.C. 776, 784 (1989). However, in a recent opinion, we concluded that the Tax Court can address a claim of equitable recoupment in deciding a case that comes within its jurisdiction.[3]Estate of Mueller v. Commissioner, 101 T.C. 551 (1993). In the instant case, petitioner has not referred us to, nor have we found, authority, statutory or otherwise, establishing entitlement to the claimed deduction or credit. Petitioner also failed to indicate the specific basis for the relief he was seeking, instead referring to general principles of equity and fairness. We hold that he is *354 not entitled to a deduction or credit based upon principles of equity for the out-of-pocket expenses he incurred. See Paxman v. Commissioner, 50 T.C. 567, 576 (1968), affd. 414 F.2d 265 (10th Cir. 1969). Additions to Tax
1. Negligence
Section 6653(a)(1) provides that, if any part of any underpayment of tax is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) provides for an addition to tax in the amount of 50 percent of the interest payable on a portion of the underpayment *355 of tax attributable to negligence. Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Petitioner argues that he is not negligent because he relied upon (1) Koepenick's advice, (2) the fact that a purportedly prominent accounting firm was affiliated with MCDA, and (3) his own business experience and judgment. With respect to petitioner's purported reliance on Koepenick, we find that petitioner's argument contradicts his stipulation in which he agreed that he did not rely upon Koepenick's advice. However, even assuming that he did rely upon Koepenick, such reliance would be unreasonable under these facts. Under certain circumstances reliance by a taxpayer on the advice of a competent adviser can be a defense to the additions to tax for negligence. See, e.g., United States v. Boyle, 469 U.S. 241, 250-251 (1985); *356 Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991). However, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). It must be established that the reliance was reasonable, in good faith, and based upon full disclosure. Ewing v. Commissioner, supra; Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). We have rejected assertions of reliance when neither the taxpayer nor the "expert" relied upon by the taxpayer knew anything about the business involved. Freytag v. Commissioner, 89 T.C. at 888; Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983). Koepenick was a tax shelter promoter who sold interests *357 in limited partnerships to investors. Koepenick received a commission from his sales, including those for MCDA. Other than the prior promotion of a similar partnership, Koepenick had no practical experience or training in the field of oil and gas drilling. He did not conduct a reliable and in-depth investigation into the authenticity of the assertions made by representatives of MCDA, nor did he hire an independent agency to perform such an investigation. Based upon Koepenick's lack of knowledge concerning MCDA's purported activities and the industry in general, we find that, even if petitioner had relied upon Koepenick, such reliance would be unreasonable. See Rybak v. Commissioner, 91 T.C. 524, 565 (1988). Similarly, petitioner cannot shield himself from liability for the additions to tax for negligence based upon the involvement of LH. Petitioner claimed that he relied upon the financial statements and Forms K-1 issued by LH. Nothing in the record indicates that LH had first-hand knowledge of the programs undertaken by MCDA sufficient to support any in-depth analysis of the investment. We think petitioner's reliance on any advice purportedly *358 rendered by LH was unreasonable. See Steerman v. Commissioner, T.C. Memo. 1993-447. Finally, petitioner failed to perform the most elementary steps to investigate the economic viability of this investment. He conducted no independent research concerning the drilling industry and, in particular, the program offered by MCDA. Petitioner failed to enlist the services of an independent adviser to undertake this investigation. He claimed that his reliance on the promotional material and his own business judgment was sufficient. With respect to petitioner's business judgment, his investment experience in similar types of partnerships does not appear to have provided him with any technical knowledge in the highly specialized oil and gas industry. [4] Without the assistance of an experienced independent adviser in this field, petitioner's lack of knowledge resulted in his making an uninformed decision to enter into the MCDA investment. Petitioner cannot seek support in the fact that he relied upon the information presented in the offering memorandum. It is not prudent for an investor to rely upon such material without further investigating the assertions *359 therein. This is especially true given that petitioner had no practical experience or expertise in this industry and any technical information about oil or gas drilling presented in the material would most likely not be understood. Furthermore, reliance on assertions made in offering material should be tempered because of the potential for a lack of objectivity. In any event, the material should have aroused some suspicion concerning the investment because the promotional material clearly stated that an investor could achieve a tax writeoff three times the amount of cash invested. See Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217. Accordingly, we find that petitioner was negligent and hold that he is liable for the additions to tax for negligence. See David v. Commissioner, T.C. Memo. 1993-621; Goldman v. Commissioner, T.C. Memo. 1993-480; Steerman v. Commissioner, supra; Estate of Raney v. Commissioner, T.C. Memo. 1992-684. *360 2. Substantial Understatement
Section 6661(a) provides for an addition to tax in the amount of 25 percent of the underpayment attributable to a substantial understatement of tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988). An understatement is substantial if it exceeds the greater of 10 percent of the correct tax or $ 5,000. Sec. 6661(b)(1)(A). In general, if a taxpayer has substantial authority for his tax treatment of the item in question, or if the taxpayer adequately disclosed the tax treatment of the item on his return, then the taxpayer may escape liability for the addition to tax with respect to that item. Sec. 6661(b)(2)(B). However, if the item in question is attributable to a tax shelter, the disclosure exception will not apply, and the substantial authority exception will apply only if there was *361 substantial authority for the treatment of the item on the returns and the taxpayer reasonably believed that his treatment of the item is more likely than not the proper treatment. Sec. 6661(b)(2)(C)(i); sec. 1.6661-5, Income Tax Regs. Petitioner bears the burden of proving that respondent's determinations are erroneous. Rule 142(a); Condor Intl., Inc. v. Commissioner, 98 T.C. 203, 226 (1992). It is clear from the record that a substantial understatement does exist for the taxable year 1982. Petitioner argues that he is not liable for the section 6661 addition to tax because MCDA is not a tax shelter for purposes of section 6661(b)(2)(C)(i), and that he adequately disclosed the tax treatment of his investment in MCDA on the returns. According to petitioner, MCDA's principal purpose was to defraud investors rather than to shelter income. A tax shelter is defined as a partnership, entity, investment plan, or other plan or arrangement whose principal purpose is the avoidance or evasion of Federal income tax. Sec. 6661(b)(2)(C)(ii). We believe that MCDA was a tax shelter as defined in the statute based upon, among other things, the fact that MCDA *362 lacked a profit motive and any economic substance, indicating that its principal purpose was tax avoidance. See Webb v. Commissioner, T.C. Memo. 1990-556, remanded on another issue without published opinion 17 F.3d 398 (9th Cir. 1994). Since we have concluded that MCDA was a tax shelter, petitioner is not entitled to rely on the adequate disclosure exception to avoid liability. Accordingly, petitioner must establish that there was substantial authority for the treatment of the item and that he reasonably believed in such treatment. Petitioner has failed to establish that there is substantial authority for his position or that he reasonably believed that the treatment of the item on the return was more likely than not the proper treatment. He was to receive tax benefits from his investment in MCDA equal to 300 percent of his cash outlay. Despite the obvious disparity between his cash outlay and the losses he could claim, petitioner proceeded to invest in MCDA and claim the said losses on his return without performing any meaningful investigation of the partnership. Based upon the record, we find that petitioner did not *363 undertake the kind of independent factual analysis of MCDA to enable him to formulate a reasonable belief as to the tax treatment of the loss and to determine whether such treatment was more likely than not the proper treatment. Accordingly, we hold that he is liable for the section 6661(a) addition to tax for taxable year 1982. 3. Section 6621(c)
Respondent determined that the deficiencies for the taxable years 1981 and 1982 are subject to the increased rate of interest imposed under section 6621(c). Section 6621(c)(1) imposes an increased rate of interest when there is a substantial understatement attributable to a "tax motivated transaction". Congress specifically amended section 6621(c) in the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1535(a), 100 Stat. 2085, 2750, to add to the list of tax-motivated transactions "any sham or fraudulent transaction". Sec. 6621(c)(3)(A)(v). This Court has interpreted section 6621(c)(3)(A)(v) to include transactions without economic substance. Patin v. Commissioner, 88 T.C. 1086 (1987), affd. without published opinion sub nom. Hatheway v. Commissioner, 856 F.2d 186 (4th Cir. 1988), *364 affd. sub nom. Skeen v. Commissioner, 864 F.2d 93 (9th Cir. 1989), affd. without published opinion 865 F.2d 1264 (5th Cir. 1989), affd. sub nom. Gomberg v. Commissioner,868 F.2d 865 (6th Cir. 1989). For purposes of section 6621(c), an underpayment exceeding $ 1,000 is substantial. The additional interest accrues after December 31, 1984, even if the transaction was entered into prior to the enactment of section 6621(c). Solowiejczyk v. Commissioner, 85 T.C. 552 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986). The underpayment of tax for the years 1981 and 1982 exceeds $ 1,000; therefore, it is substantial for purposes of section 6621(c). The investment opportunity in MCDA was a sham. The activities of MCDA were not engaged in with the requisite profit motive within the meaning of section 183, and MCDA was not organized to carry out the business purpose as professed by its representatives and in the promotional material. Accordingly, the portion of petitioner's underpayment for the taxable years 1981 and 1982 *365 which resulted from the disallowance of petitioner's distributive share of MCDA's losses is subject to the increased interest rate imposed on a tax-motivated transaction under section 6621(c). See Estate of Raney v. Commissioner, T.C. Memo. 1992-684. Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. 50 percent of the interest due on the deficiency.↩
2. Petitioner does not argue that the loss qualifies as a sec. 165(c)(3)↩ casualty or theft loss.
3. In Estate of Mueller v. Commissioner, 101 T.C. 551↩ (1993), the taxpayer sought to reduce its liability for estate tax through recoupment of an overpayment of income tax by a trust. The statute of limitations barred a refund of the overpayment. We held that the Tax Court had jurisdiction to decide the claim of equitable recoupment.
4. While petitioner established that he invested in similar partnerships, he did not present any information regarding the success of these investments.↩