T.C. Memo. 1996-41

UNITED STATES TAX COURT

BEVEL M. AND PATRICIA N. HOFFPAUIR, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6475-87.                    Filed February 5, 1996.

Bevel M. and Patricia N. Hoffpauir, pro se.

<u>Julie M.T. Foster</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' income tax and additions to tax as follows:

|       |            | Additions to Tax | |
| Year  | Deficiency | Sec. 6653(a)(1) | Sec. 6659 |
| ----- | ---------- | --------------- | --------- |
| 1980  | $2,924     | $146            | $877      |
| 1981  | 1,969      | 98              | 591       |
| 1982  | 2,381      | 119             | 714       |
| 1983  | 1,940      | 97              | 582       |

Respondent also determined that petitioners are liable for increased interest under section 6621(c) for the portion of the underpayment attributable to tax-motivated transactions.

After concessions, we must decide the following issues:

1.   Whether petitioners may deduct an amount equal to their cash investment in Century Concepts, Inc., in the years in issue. We hold that they may not.

2.   Whether petitioners are liable for additions to tax for the years in issue for:  (a) Negligence under section 6653(a), and (b) valuation overstatement under section 6659.  We hold that they are.

3.   Whether petitioners are liable for increased interest on substantial underpayments due to tax-motivated transactions under section 6621(c) for the years in issue.  We hold that they are.

Petitioners concede that they are not entitled to claim the investment tax credit for their investment in Century Concepts.

References to petitioner are to Bevel M. Hoffpauir.  Section references are to the Internal Revenue Code in effect for the taxable years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

1. <u>Petitioners</u>

Petitioners resided in Maple Valley, Washington, when they filed the petition in this case.

Petitioner has a 2-year associate's degree in computer science and data processing and worked as a computer operator and programmer, systems analyst, and data processing manager before 1983.

Petitioners founded a firm called Seattle Distribution Service, Inc. (SDSI), around 1980. Petitioner wife was the bookkeeper for SDSI. SDSI distributed merchandise for importers. Petitioner researched buying computer hardware and software for SDSI. Petitioners bought a Burroughs system and off-the-shelf software from a company called R&D Systems Development, which petitioners had customized for their business. One reason petitioner chose Burroughs was that it provided technical support to its customers. Petitioner also investigated computer systems offered by Honeywell, IBM, and Tandy.

2. <u>Petitioners' Purchase of an Interest in Century Concepts</u>

Petitioners first heard about Century Concepts, Inc. (Century), from one of their friends, Dan Marinelli (Marinelli). Marinelli was the office manager of a company named ITC Business and Tax Counseling (ITC), which was run by Frank Dollar (Dollar).

Petitioner wife attended a seminar with about 30 people held at ITC around August 1983. Petitioner attended a seminar at ITC a couple of weeks later which was attended by 10 or 15 people. Petitioners later met one-on-one with Dollar and received Century promotional materials. Petitioners believed that Century's promotional materials looked very professional, that Dollar made credible presentations, and that Century was founded by well-known people with appropriate expertise. Petitioners did not investigate Century's founders. The Century program was marketed as a "tax advantaged equipment lease".

Petitioner wife saw Century accounting software demonstrated at Dollar's office. Petitioner was out of town at that time and did not see it demonstrated. Petitioners did not have their own copy of the software. Petitioners believed there was a good marketing plan for the accounting software.

Petitioners saw literature from Century that stated, and they believed, that home use of computers and software would grow tremendously in the coming years.

Petitioner's accounting program was in a cassette format. Petitioner believed that a cassette format was suitable for home and small business use, but that it would not be adequate for a business the size of SDSI, which used a hard disk format.

On November 2, 1983, petitioners leased an interest in accounting software entitled "Accounting Control System; Accounts

Receivable" from Century. Petitioners paid $4,850 for their interest in the software. They paid $2,975 on November 2, 1983, and $1,875 on April 30, 1984. Petitioners invested in the accounting software through a purported joint venture with three other parties whom they never met. Petitioners' one-fourth interest in the software (for which they paid $4,850) was valued by Century at $93,750 (one-fourth of $375,000). Petitioners did not arrange for an independent appraisal of the software. Petitioners signed an agreement provided to them by Dollar under which they hired ALA Enterprises (ALA) on November 25, 1983, to distribute the software. The distribution agreement said ALA would sell 500 copies of the accounting software package for the fee petitioners paid ALA. Petitioners never estimated how many copies of the accounting software package would have to be sold to make a profit.

Petitioners invested in accounting software instead of video game software because petitioner heard from Alan Stone with Far East Video, a client of SDSI which had exclusive distribution rights in the United States from Nintendo for the Space Fever and Sheriff video games, that the video game market was soft in 1983.

Petitioners did not talk to a tax or financial adviser (other than Dollar) before they invested in the accounting software.

Petitioners received a $60.48 distribution related to the accounting software a few months after making the investment. They were told the payment was based on sales of 32 units.

3.   Petitioners' Other Investments

Petitioners bought silver bullion from a company called Monex through Marinelli and Dollar at Century soon after buying an interest in the accounting program.  Petitioners also invested in a Denver company started by a friend of petitioner called Pyrodisc, which produced a newly invented product similar to a Frisbee.  Petitioners did not own stock except in SDSI and Pyrodisc.  Petitioners did not earn a profit from their silver or Pyrodisc investments, and they lost the money they had invested in them.

4.   Petitioners' Tax Returns

Before 1983, Stanton's Accounting and Tax Service prepared petitioners' and SDSI's tax returns.  Dollar prepared petitioners' 1983 tax return.  He was not a C.P.A.  Petitioner reviewed the 1983 return before it was filed.  Petitioners did not have a financial or tax adviser or attorney on retainer in 1983.  Petitioners have prepared their own tax returns since 1984 or 1985.

Petitioners reported a $1,131 loss and claimed a $9,375 investment tax credit (of which they used $1,774) on their 1983 tax return.  Petitioners carried back unused investment tax

credits of $2,924 for 1980, $1,970 for 1981, and $2,381 for 1982. Respondent disallowed the loss and the investment tax credit.

Petitioners received a total tax refund of $9,629.10 from their $4,850 payment for an interest in Century, based on claiming an investment tax credit in 1983, which they carried back to 1980, 1981, and 1982. By notice of deficiency dated December 11, 1986, respondent disallowed the investment tax credit for petitioners' investment in Century for 1980, 1981, 1982, and 1983.

OPINION

1. Whether Petitioners May Deduct the Amount of Cash That They Invested in Century Concepts, Inc.

Respondent determined that the Century investment program was a sham designed to obtain deductions for purported tax losses, tax credits, and nondeductible items. Respondent's determination is presumed to be correct, and petitioners bear the burden of proving otherwise. Rule 142(a).

Petitioners contend that they may deduct the cash they invested in Century software because they had a profit objective and because their investment was not tax motivated.

A taxpayer may not deduct out-of-pocket cash losses under section 165(c)(2) from a tax shelter which lacks economic substance, even if the taxpayer intended to make a profit. Mahoney v. Commissioner, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. Forseth v. Commissioner, 85 T.C. 127 (1985); Cherin v.

Commissioner, 89 T.C. 986, 993-994 (1987) (even if a taxpayer has a profit objective, the investment is not recognized for tax purposes if the transaction lacks economic substance). Petitioners have not shown that this case is different from Mahoney or Cherin; that is, petitioners have not argued or shown that the Century transaction had economic substance. Petitioners do not dispute respondent's determination that the Century transaction was a sham. We conclude that the Century investment program was an economic sham and that it should be disregarded for Federal income tax purposes. Pasternak v. Commissioner, 990 F.2d 893, 898 (6th Cir. 1993), affg. Donahue v. Commissioner, T.C. Memo. 1991-181; Illes v. Commissioner, 982 F.2d 163, 166 (6th Cir. 1992) ("If the transaction lacks economic substance, then the deduction must be disallowed without regard to the 'niceties' of the taxpayer's intent"), affg. T.C. Memo. 1991-449. Therefore, petitioners may not deduct their cash investment. In view of our conclusion, we need not decide whether petitioners invested in the Century program with a profit objective or whether their investment was tax motivated.

Petitioners claim that they may deduct their cash investment in Century because Century took their cash contributions fraudulently. Petitioners have not shown that Century acted with criminal intent to deprive them of their cash contributions. Thus, no theft loss deduction is allowable. Nor may petitioners

deduct their cash investment in Century based upon principles of equity. See Paxman v. Commissioner, 50 T.C. 567, 576 (1968), affd. 414 F.2d 265 (10th Cir. 1969); Farmer v. Commissioner, T.C. Memo. 1994-342.

## 2. Whether Petitioners Were Negligent

Negligence is a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982); Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299; Neely v. Commissioner, 85 T.C. 934, 947 (1985). To prevail on the issue of negligence, petitioners must prove that their actions in connection with this transaction were reasonable in light of their experience and business sophistication. Avellini v. Commissioner, T.C. Memo. 1995-489; Lucas v. Commissioner, T.C. Memo. 1995-341; Poplar v. Commissioner, T.C. Memo. 1995-337; see Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). If a taxpayer is misguided, is unsophisticated in tax law, and acts in good faith, we may conclude that he or she is not liable for the addition to tax for negligence. Collins v. Commissioner, 857 F.2d 1383, 1386 (9th Cir. 1988), affg. Dister v. Commissioner, T.C. Memo. 1987-217; Hanson v. Commissioner, 820

F.2d 1464, 1469 (9th Cir. 1987); <u>Haman v. Commissioner</u>, 500 F.2d 401, 403 (9th Cir. 1974), affg. T.C. Memo. 1972-118.

Petitioners contend that they were not negligent.  They argue that they did extensive computer and software-related research before investing in Century.  They testified that they believed their product had great potential, was earning income until the Internal Revenue Service (IRS) investigation began, and was valued reasonably compared to similar products.  Petitioners also argue that it is unrealistic to hold them negligent because it took respondent 2 years to discover that Century had defrauded its investors.

Petitioner's research for the software he used in his business was not related to research for the accounting software investment.  An inquiry into the best computer system for a business is much different than an inquiry whether an accounting program will be a financial success.  We disagree with petitioner's claim that he adequately investigated the Century program.

Petitioners contend that they reasonably relied on people who held themselves out to be experts, i.e., the management of the companies in which they invested.  Petitioners argue that they lacked expertise and financial sophistication and that "due care does not require moderate-income investors * * * to independently investigate their investments", quoting <u>Heasley v.</u>

Commissioner, 902 F.2d 380, 383 (5th Cir. 1990), revg. T.C. Memo.
1988-408 (taxpayers held not negligent because they were
unsophisticated with limited prior investment experience and
had no formal education beyond high school).

In Heasley v. Commissioner, supra at 381, the taxpayers
sought the advice of an accountant who independently reviewed the
prospectus and the accompanying tax and legal opinions and found
everything to be in order.  Because the taxpayers in Heasley
previously had not employed an accountant, they hired an
accountant referred to them by the promoter of the tax shelter.
Id.  There is no indication, however, that the accountant was an
employee of the promoter or otherwise had any financial interest
in the tax shelter.  Id.

Petitioners' situation is not like that in Heasley.
Petitioners did not have a C.P.A. or other tax or business
professional independently review their investment in Century.
They did not investigate Dollar or Century before investing.
Dollar was the promoter; he was not independent.  There is no
showing that he was a qualified tax professional.  They relied on
the advice of Dollar.  It was not reasonable or prudent to have
done so.  Advice of the promoters or their agents is not advice
of independent professionals.  Pasternak v. Commissioner, 990
F.2d at 903; Gilman v. Commissioner, T.C. Memo. 1990-205, affd.
933 F.2d 143 (2d Cir. 1991) (lessees of computer software lack

profit objective where the only appraisals relied upon by taxpayer-investors were made by a tax shelter promoter). Petitioners did not investigate Dollar's professional qualifications. Cf. Allen v. Commissioner, 925 F.2d 348, 354 (9th Cir. 1991), affg. 92 T.C. 1 (1989).

Petitioners used an independent tax preparation service to prepare their returns before 1983. In 1983, they relied on someone who had a financial interest in the shelter in which they were investing to prepare their return. Unlike the Heasleys, petitioners obtained tax advice only from the shelter promoter. See Klieger v. Commissioner, T.C. Memo. 1992-734 (taxpayers were negligent because they relied unreasonably on advice of shelter promoters). To avoid the addition to tax for negligence on the ground of reasonable reliance, petitioners must show that they reasonably relied on the advice of a qualified and independent tax professional, not the tax shelter promoter. Id.; see Estate of Strober v. Commissioner, T.C. Memo. 1992-350.

Petitioners made no real effort to monitor their investment or conduct any meaningful review of the computer software in which they had bought an interest. Heasley v. Commissioner, supra (taxpayers who actively monitored their investment and made inquiries of servicing agent were not negligent). Petitioners' receipt of a $60.48 distribution is not significant because it is only 1-1/4 percent of petitioners' payment; they would have to

have received 81 times that amount to make a profit on their investment.

The fact that Dollar leased petitioners an interest purportedly worth $93,750 for $4,850, which immediately generated tax savings of $9,629.10, should have prompted petitioners to look beyond Dollar for advice. See Allen v. Commissioner, supra at 353 (taxpayer negligent where tax savings were almost double the amount of their cash outlay).

We hold that petitioners are liable for the additions to tax under section 6653(a) for 1980, 1981, 1982, and 1983.

3. Whether Petitioners Overvalued the Video Games

Respondent determined that petitioners are liable for additions to tax for valuation overstatement under section 6659. That section provides for an addition to tax of up to 30 percent of the underpayment of tax (of at least $1,000) attributable to a valuation overstatement. Sec. 6659(a) and (b). A valuation overstatement occurs where the claimed value or adjusted basis of property is 150 percent or more of the value or adjusted basis that is "determined to be the correct amount." Sec. 6659(c).

The Secretary may waive this addition to tax if the taxpayer shows that there was a reasonable basis for the valuation claimed, and that the claim was made in good faith. Sec. 6659(e). The Court reviews this determination for abuse of discretion. Krause v. Commissioner, 99 T.C. 132, 179 (1992).

Petitioners point out that the IRS did not appraise the accounting software.  They challenge respondent's position that it was worth zero.  They argue that because Century is no longer in business, it is impossible to determine that the product was overvalued.  Petitioners bear the burden of proving that they did not overvalue the Century software.  Rule 142(a).

Century valued the software at $375,000, of which petitioners' one-fourth share was $93,750.  The $375,000 amount bears no relation to the fair market value of the software.  Petitioners received a $60 return (purportedly based on sales of 32 units) on their $4,850 investment.  There is no credible evidence that petitioners could expect 2,570 sales, the number needed for petitioners to recover their cash investment.

When an underpayment results from disallowed depreciation deductions or investment credits due to lack of economic substance, section 6659 applies because the correct basis is zero and any basis in excess of that is a valuation overstatement. Gilman v. Commissioner, 933 F.2d at 151; Massengill v. Commissioner, 876 F.2d 616, 619-620 (8th Cir. 1989), affg. T.C. Memo. 1988-427; Rybak v. Commissioner, 91 T.C. 524, 566-567 (1988); Clayden v. Commissioner, 90 T.C. 656, 677-678 (1988).

We concluded above that petitioners' interest in Century lacked economic substance.  Petitioners conceded that they were not entitled to an investment credit for their investment.  The

valuation overstatement was integral to a finding that the investment program lacked economic substance. Thus, we hold that petitioners are liable for the addition to tax for valuation overstatement.

4.   Whether Petitioners Are Liable for Increased Interest

Respondent determined that petitioners are liable for increased interest under section 6621(c) on substantial underpayments attributable to tax-motivated transactions for the years in issue. Petitioners contend that they were motivated by profit and not tax reasons when they invested in Century.

Section 6621(c) (formerly section 6621(d)) provides for an increase in the interest rate where there is a "substantial underpayment" (an underpayment exceeding $1,000) in any taxable year "attributable to 1 or more tax motivated transactions." Section 6621(c)(3) defines certain transactions as tax motivated. The increased rate of interest applies to interest which accrues after December 31, 1984 (the date of enactment of section 6621(d)), even though the tax-motivated transaction was entered into before that date and "regardless of the date the return was filed." H. Conf. Rept. 98-861 (1984), 1984-3 C.B. (Vol. 2) 1, 239; Solowiejczyk v. Commissioner, 85 T.C. 552, 556 (1985), affd. without published opinion 795 F.2d 1005 (2d Cir. 1986).

A valuation overstatement under section 6659 is a "tax-motivated transaction." Sec. 6621(c)(3)(A)(i). We have held

that there is a valuation overstatement in this case to which section 6659 applies.  Thus, the increased rate of interest under section 6621(c) automatically applies to underpayments of tax attributable to petitioners' investment in Century.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.