RANDALL J. AND KAREN G. THOMPSON, PETITIONERS
*v*. COMMISSIONER OF INTERNAL REVENUE,
RESPONDENT

Docket No. 30586–08.          Filed December 27, 2011.

On the basis of a final decision in a partnership-level proceeding for RJT Investments X, LLC, which had made all partnership allocations for its tax year ended Dec. 31, 2001, to P–H, R determined an income tax deficiency and an accuracy-related penalty for Ps' 2001 tax year. Immediately after issuing a notice of deficiency to Ps, R directly assessed the deficiency and penalty amounts determined in that notice. R has since acknowledged errors in these deficiency and penalty amounts and has made corresponding assessment abatements. Nonetheless, R argues that the notice of deficiency is invalid and that the Court lacks jurisdiction over the case because the changes to Ps' 2001 tax liability shown on the notice are computational adjustments that are not subject to deficiency procedures. Ps have conceded the amount of the deficiency but urge us to follow *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010), affg. in part, revg. in part and remanding in part 131 T.C. 84 (2008), and hold that the accuracy-related penalty does not relate to an adjustment to a partnership item and can be assessed only following deficiency procedures. *Held*: Computing Ps' income tax deficiency arising from the adjustments finalized in the partnership-level proceeding in *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05 (June 6, 2006), affd. 491 F.3d 732 (8th Cir. 2007), does not require any partner-level determinations, and assessing or collecting this deficiency is not subject to deficiency procedures. *Held*, *further*, the errors in the notice of deficiency do not constitute a "determination" under sec. 6212(a), I.R.C. *Held*, *further*, the accuracy-related penalty may be directly assessed and is not subject to deficiency procedures, notwithstanding the need for partner-level determinations. *Held*, *further*, the notice of deficiency is invalid and the Court lacks jurisdiction over this case. R's motion to dismiss for lack of jurisdiction will be granted.

*Edward M. Robbins, Jr.*, for petitioners.
*James A. Kutten*, for respondent.

220

OPINION

WHERRY, *Judge*: This case is before the Court on respondent's motion to dismiss for lack of jurisdiction. The case constitutes a partner-level action under the unified partnership audit and litigation procedures of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97–248, sec. 402(a), 96 Stat. 324. [1]

## *Background*

### I. *Partnership-Level Proceeding*

Petitioner husband, Randall J. Thompson, engaged in a Son-of-BOSS (BOSS) market linked deposit transaction in 2001, seeking to offset approximately $21,500,000 in capital gains. To facilitate the BOSS transaction, petitioner husband formed RJT Investments X, LLC (RJT), on October 12, 2001. For its tax year ended December 31, 2001, RJT made all partnership allocations to petitioner husband. The Commissioner issued a notice of final partnership administrative adjustment (FPAA) to RJT for 2001 on March 21, 2005, disallowing deductions and losses and determining an accuracy-related penalty under section 6662.

Petitioner husband, as the tax matters partner of RJT, petitioned this Court challenging the FPAA in a partnership-level proceeding, *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05. The Court entered a decision in that case on June 6, 2006. That decision was affirmed by the Court of Appeals for the Eighth Circuit in *RJT Invs. X, LLC v. Commissioner*, 491 F.3d 732 (8th Cir. 2007).

### II. *Issuance of Notice*

Petitioners' 2001 Form 1040, U.S. Individual Income Tax Return, included income, deductions, and losses relating to RJT. In a stipulation of facts filed June 16, 2011, the parties agree that "On September 22, 2008, respondent timely mailed an affected items notice of deficiency for the year ending December 31, 2001, to petitioners determining a deficiency in federal income tax and an addition to tax pursuant

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986 (Code), as amended and in effect for the year at issue, 2001, and all Rule references are to the Tax Court Rules of Practice and Procedure.

to I.R.C. § 6662(h)." The "copy of the affected items notice of deficiency issued to petitioners for the year ending December 31, 2001" attached to the stipulation of facts shows the following amounts: (1) $4,634,243.00, labeled "Tax"; and (2) $1,853,697.20, labeled "IRC 6662(h)". The stipulation of facts further states that "On September 23, 2008, respondent assessed the following against petitioners regarding the flow through adjustments from RJT Investments X, LLC (a) $1,853,697.20 penalty pursuant to I.R.C. § 6662, (b) $4,634,243.00 tax, and (c) $3,053,575.48 interest."

Petitioners filed a petition on December 19, 2008, before the December 22, 2008, date shown as the "Last Day to File a Petition With the United States Tax Court" on the September 22, 2008, notice of deficiency. On December 2, 2009, respondent filed a motion to dismiss for lack of jurisdiction (motion), and a memorandum in support of respondent's motion to dismiss for lack of jurisdiction. Pursuant to an order of the Court of December 8, 2009, petitioners timely filed a memorandum in opposition to respondent's motion to dismiss for lack of jurisdiction on December 31, 2009.

Respondent's motion asks

that this case be dismissed for lack of jurisdiction upon the ground that no valid statutory notice of deficiency * * * has been sent to petitioners with respect to taxable year 2001, *nor has respondent made any other determination with respect to petitioners' taxable year 2001 that would confer jurisdiction on this Court.* [Emphasis supplied.]

The motion argues that the September 22, 2008, "notice of deficiency is invalid as the determination relates to computational flow through adjustments that are immediately assessable and not affected items requiring partner-level determinations made through a notice of deficiency".

III. *Errors in Notice*

In reviewing the record in the case, the Court noted two apparent errors by respondent in making adjustments to petitioners' 2001 Form 1040 to give effect to the June 6, 2006, decision in the partnership-level proceeding. The Court brought these apparent errors to the parties' attention.[2] The

[2]The Court uncovered these apparent errors when comparing the June 6, 2006, decision in the partnership-level proceeding and petitioners' Form 1040, on the one hand, with the adjustments shown on Form 886–A, Explanation of Items, attached to the Sept. 22, 2008, notice of

parties subsequently filed a stipulation of settlement on July 26, 2011. The stipulation of settlement states in part that

*To the extent that this Court has jurisdiction* to redetermine respondent's determination in the September 22, 2008, affected item notice of deficiency, the parties agree that respondent's determination regarding the deficiency and penalty pursuant to I.R.C. § 6662(h) for 2001, modified as set forth on the Audit Statement and Statement—Income Tax Changes attached hereto as Exhibit B, is correct. [Emphasis supplied.]

Exhibit B attached to the July 26, 2011, stipulation of settlement, includes a Form 3610, Audit Statement, and a Form 5278, Statement—Income Tax Changes, for petitioners for tax year 2001, each bearing a date of July 18, 2011. The July 18, 2011, Form 3610 shows a "statutory deficiency" of $4,248,420. Line 21 of the July 18, 2011, Form 5278 confirms that the "Deficiency—increase in tax" is $4,248,420. By comparison, on the September 22, 2008, notice of deficiency, the amount shown as "Deficiency" under "Tax" is $4,634,243.[3]

_____

deficiency, on the other. One of these adjustments sought to give effect to the holding in the partnership-level decision of June 6, 2006, that "RJT Investments X, LLC is disregarded for Federal income tax purposes." Explaining that "We have adjusted your return in accordance with the Tax Court decision for RJT Investments X, LLC", Form 886–A purports to deny petitioners the entire amount of the short-term capital loss that they had claimed on Schedule D, Capital Gains and Losses, on account of "LIQUIDATION OF RJT INVESTMENTS X, LLC". Form 886–A shows a "Per Return" short-term capital loss of $22,006,759 and a corresponding positive "Adjustment" in the same amount. However, the Court observed that petitioners' Schedule D had actually claimed, on line 7, a "Net short-term capital * * * loss" of $21,032,415. The amount of $22,006,759 was, in fact, the claimed "Cost or other basis" of the purported investment in the partnership, shown in column (e) of line 1 of Schedule D.

Another adjustment on Form 886–A sought to give effect to the determination in the partnership-level decision of June 6, 2006, that the appropriate amount of the "Partnership Item" described as "Investment income included in portfolio income" was zero and not $206. The Court noted that this redetermination of the relevant partnership item should have "zeroed out" the $206 amount shown on petitioners' Schedule K–1, Partner's Share of Income, Credits, Deductions, etc., on line 4(b), Ordinary dividends. Nonetheless, if the $206 amount was actually received by petitioner husband, it should arguably still have been shown on petitioners' Schedule B, Interest and Ordinary Dividends, under Part II, Ordinary Dividends. Instead of being denoted "FROM K–1—RJT INVESTMENTS X, LLC", as petitioners had done, the dividend should have been attributed directly to the underlying security. However, it is unclear whether the partnership-level decision of June 6, 2006, had eliminated the partnership item of $206 of dividend or merely rendered it a nonpartnership item. If the latter, then there should have been no net amount of adjustment to petitioners' Schedule B. But Form 886–A, under "Dividends", zeroed out the $206 amount with a negative adjustment in the same amount, without an accompanying positive adjustment to reflect the nonpartnership character of the item.

[3] Also, the July 18, 2011, Form 3610 shows an amount under "§ IRC 6662(h)" of $1,699,368. Again, the July 18, 2011, Form 5278 confirms on line 24 that "Penalties and/or Additions to Tax" under "IRC 6662" amount to $1,699,368. By comparison, on the Sept. 22, 2008, notice of deficiency, the amount shown for "IRC 6662(h)" is $1,853,697.20.

We note that the deficiency and penalty amounts in the attachments to the July 26, 2011, stipulation of settlement are based on petitioners' revised taxable income that reflects disallow-

Continued

We recognize that the September 22, 2008, notice of deficiency contains deficiency and penalty amounts that are larger than the respective amounts that respondent has now stipulated as "correct". Presumably, respondent now believes that the smaller stipulated amounts are the appropriate versions of what he characterized in paragraph 7 of his motion as "computational assessments [that] are authorized by I.R.C. § 6230(a)(1) to be directly assessed without the issuance of an affected items notice of deficiency."

### *Discussion*

We consider, in sequence, our jurisdiction over petitioners' income tax deficiency and the accuracy-related penalty.

### I. *Jurisdiction Over Deficiency*

Whether we have jurisdiction over petitioners' income tax deficiency, in turn, requires us to decide the following three issues: (1) Whether an affected items notice of deficiency issued in the absence of a need for partner-level determinations is void ab initio; (2) whether an erroneous computational adjustment, which both was made and can be corrected without partner-level determinations, constitutes an additional determination rendering valid the notice containing it; and (3) whether any partner-level determinations are required, in petitioners' case, to properly reflect the treatment of partnership items made in the partnership-level proceeding.

### A. *Notice Void Ab Initio*

We first confront the argument that even though an affected items notice of deficiency may not be required in the

---

ance of a net short-term capital loss of $21,032,415, the actual amount petitioners had claimed on their Schedule D, and not the "Per Return" amount of $22,006,759 shown on Form 886–A. We further note, however, that this revised taxable income still does not account for the $206 dividend amount.

As we explain *infra* Discussion, pt. I.C., we decline to look behind the purported affected items notice of deficiency in testing its validity. We acknowledge that in discovering what appeared to be errors in that notice, we considered material submitted by the parties, including petitioners' Form 1040, and compared it with attachments to the notice. We ignored all such material in conducting our jurisdictional inquiry. Further, because we conclude *infra* Discussion, pts. I.E. and II.C., that we lack jurisdiction over the case, we wish to make it clear that in alerting the parties to these apparent errors we did not make any findings on these issues, which speak for themselves in accordance with the statements on the documents. Though the parties have come to an agreement regarding these apparent errors, we disclaim any responsibility for, or jurisdiction over, their agreement.

absence of a need for partner-level determinations, once the Commissioner does issue such a notice, he is bound by it. If this is correct, then, pursuant to section 6213(a), "no assessment of a deficiency in respect of any tax * * * shall be made, begun, or prosecuted * * *, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final." This argument presumes that an affected items notice of deficiency is elective if no partner-level determinations are needed. Moreover, once the Commissioner makes the election, then the restrictions on assessments are necessarily activated. This argument, and the electiveness of an affected items notice of deficiency, are refuted by the plain language of the statute.

The applicability or inapplicability of deficiency procedures under section 6230 is statutorily mandated and bereft of any administrative discretion. Under section 6230(a)(1), "Except as provided in paragraph (2) [relating to affected items requiring partner-level determinations] or (3) [relating to items ceasing to be partnership items], subchapter B of this chapter [containing deficiency notice procedures and requirements] *shall not* apply to the assessment or collection of any computational adjustment." (Emphasis supplied.) Conversely, under section 6230(a)(2)(A), "Subchapter B *shall* apply to any deficiency attributable to * * * affected items which require partner level determinations". (Emphasis supplied.) Thus, for giving partner-level effect to the treatment of any partnership item, the deficiency procedures of subchapter B, sections 6211 through 6216, either apply or do not, depending upon whether partner-level determinations are, or are not, needed. The Commissioner enjoys no element of choice of any sort.

In the absence of a need for partner-level determinations, sections 6211 through 6216 simply do not apply. Consequently, whatever notice the Commissioner may inappro-

priately (albeit understandably) issue, [4] it cannot trigger the restraints on assessment of section 6213(a). [5]

### B. *Any Other Determination*

We now consider the contention that in making an erroneous computational adjustment, respondent has "made any other determination with respect to petitioners' taxable year 2001 that would confer jurisdiction on this Court."

It may be argued that if an affected items notice of deficiency determines an amount higher than the amount that the Commissioner eventually concedes as the definitive deficiency, then the notice does not properly reflect the treatment of the partnership items at issue. [6] Specifically, the argument posits that the acknowledged errors in computing the impact of the treatment of one or more partnership items cause the notice's determination no longer to be a "computational adjustment" under section 6231(a)(6) but to constitute a "deficiency" within the meaning of section 6211(a). The argument would bring the notice of deficiency within the purview of the deficiency procedures of sections 6211 through 6216. Consequently, whether or not partner-level determina-

---

[4] See the Commissioner's Chief Counsel Notice CC–2009–11 (Mar. 11, 2009), which outlines a protective assessment procedure for "those cases in which a partner has sold at a loss * * * the TEFRA partnership interest". Notice CC–2009–11 acknowledges that

If the IRS issues a notice of deficiency, the statute of limitations is tolled, but only if section 6230(a)(2) authorizes the notice of deficiency. * * * To account for this uncertainty in classifying affected items, the IRS should issue a notice of deficiency with respect to the affected items and any penalties relating to the affected items * * * [regardless of the need for partner-level determinations. Also], the IRS should assess the entire deficiency, including any penalties, reflecting both the outcome of the partnership-level proceeding as well as what was included in the affected item notice of deficiency.

[5] We note that no Court of Appeals has yet concluded as much. The Court of Appeals for the Sixth Circuit in *Desmet v. Commissioner*, 581 F.3d 297, 302 (6th Cir. 2009), affg. in part and remanding on other grounds *Domulewicz v. Commissioner*, 129 T.C. 11 (2007), appears to have come close when it acknowledged that "TEFRA prefers that * * * computational adjustments be assessed directly to the partner's return, without a second set of proceedings against each partner." By comparison, the Court of Appeals for the Ninth Circuit in *Napoliello v. Commissioner*, 655 F.3d 1060, 1064 n.1 (9th Cir. 2011), affg. T.C. Memo. 2009–104, declined to "reach the question of whether the notice of deficiency would be invalid if no partner-level determination were necessary." We do not enjoy the luxury of leaving the issue unresolved here.

[6] Petitioners have chosen not to make this argument and declared instead that the computational errors in the affected items notice of deficiency "have no bearing on the Court's jurisdiction in this case." Ironically, petitioners' failure to advance this argument has no bearing on our jurisdictional inquiry. We have an affirmative duty to investigate the extent of our jurisdiction regardless of the parties' submissions. See, e.g., *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006) (underlining that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party"); *United States v. Cotton*, 535 U.S. 625, 630 (2002) (holding that "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived").

tions are needed, the argument would conclude that the notice is valid and validly confers jurisdiction on us to redetermine the deficiency shown in the notice.

Supporting this argument is the tenet that the words "properly reflects" in the definition of "computational adjustment" in section 6231(a)(6) are construed to require an objectively ascertainable treatment of a partnership item. Further, the argument assumes that any such ascertainment should be made in the light of all relevant information, regardless of when or how it is revealed. Extending this argument to its logical conclusion yields manifest inconsistencies with the intent and design of the two-tier TEFRA regime. These inconsistencies would inevitably arise because a "computational adjustment" is a predicate for not just a direct assessment under section 6230(a)(1), but also an affected items notice of deficiency under section 6230(a)(2)(B). [7]

In particular, the exclusions from the "no-second-notice" rule of section 6212(c), which are contained in section 6230(a)(2)(C) and are restricted to a notice issued under section 6230(a)(2)(B), would be unavailable if an error in a computational adjustment is deemed to be "another determination". If this determination represents a section 6211(a) deficiency (instead of a section 6231(a)(6) computational adjustment), then the notice containing it would constitute a section 6212(a) notice of deficiency (instead of a section 6230(a)(2)(B) affected items notice of deficiency).

Any time we redetermine downwards a deficiency shown in an otherwise validly issued affected items notice of deficiency, after making partner-level determinations, we are necessarily holding incorrect the computational adjustment shown on the notice. If the judicially determined error in the

---

[7] See *Bush v. United States*, 655 F.3d 1323, 1332 (Fed. Cir. 2011) (acknowledging that "Our holding that the assessments in this case meet the definition of 'computational adjustment' under I.R.C. § 6231(a)(6) does not end our analysis. Notices of deficiency would still be due for any deficiencies (*including any that would otherwise be a computational adjustment*) attributable to 'affected items which require partner level determinations' under § 6230(a)(2)(A)(i)." (Emphasis supplied.)); *Desmet v. Commissioner*, *supra* at 302 (explaining that "the IRS may proceed to make *computational adjustments* to each partner's return * * * in one of *two ways*. First, the IRS may directly assess the tax against the individual partner by making a computational adjustment—applying the new tax treatment of all partnership items to that partner's return. * * * Second, if the partner's liability relates to 'affected items which require partner level determinations,' then the IRS must send a notice of deficiency to that partner, thereby initiating proceedings against him individually, pursuant to the standard deficiency procedures set forth in I.R.C. §§ 6211–16." (Emphasis supplied.) (Citations omitted.)).

computational adjustment is conceived of as "another determination" that the Commissioner has made, then our holding would ipso facto trigger the prohibition against a second notice contained in section 6212(c). Therefore, if no notice had been previously issued for the same tax year, then the affected items notice would foreclose the possibility of another notice, even with respect to nonpartnership items. More troubling, a prior notice for the same tax year for nonpartnership items would render invalid the notice underlying our redetermination. In other words, our redetermination would be moot precisely because we disagree with the Commissioner's initial determination.

We reject such perverse results and the stilted logic that inexorably leads to them. Instead, we hold that the words "properly reflects" in the definition of "computational adjustment" in section 6231(a)(6) are construed as of the time the notice is issued and without looking behind that notice. Thus, if the notice, on its face, purports to give proper effect to the treatment of a partnership item, then the resulting determination is a computational adjustment within the meaning of section 6231(a)(6). Consequently, under section 6230(a)(2)(A), the validity of this notice depends solely on the need for partner-level determinations.

### C. *Do Not Look Behind the Notice; Do Not Go to Tax Court*

For a jurisdictional inquiry, the words "properly reflects" in the definition of "computational adjustment" in section 6231(a)(6) are construed to require not a reflection that is "proper" (i.e., accurate and correct) in an abstract sense, but merely a reflection that the Commissioner contends is proper. Looking for a reflection in the Commissioner's all-too human eye instead of one in a perfectly reflecting mirror, under section 6231(a)(6), is in complete harmony with our construction of "deficiency" in section 6211(a). Under section 6211(a), we do not seek to establish an objectively verifiable existence of a deficiency to test the validity of a notice of deficiency. We focus, instead, on the Commissioner's determination of a proclaimed deficiency.

As we explained in *Hannan v. Commissioner*, 52 T.C. 787, 791 (1969): "it is not the existence of a deficiency but the Commissioner's determination of a deficiency that provides a

predicate for Tax Court jurisdiction. * * * Indeed, were this not true, then the absurd result would be that in every case in which this Court determined that no deficiency existed, our jurisdiction would be lost." This would, among other things, read out of the Code our incidental refund jurisdiction of section 6512(b). See *id.*; see also *Huffman v. Commissioner*, T.C. Memo. 1991–144 (holding that even after the Commissioner subsequently conceded the entire amount of the deficiency initially determined in the notice of deficiency, the notice continued to retain validity for jurisdictional purposes), affd. in part and revd. in part on other grounds 978 F.2d 1139 (9th Cir. 1992).

Further, in eschewing to look behind the affected items notice of deficiency, we are being perfectly consistent with our precedent in testing the validity of other "ticket[s] to the tax court", *Corbett v. Frank*, 293 F.2d 501, 502 (9th Cir. 1961), viz, section 6212(a) notices of deficiency and section 6330(d)(1)(A) notices of determination.[8]

Our holding is also in accord with *Meyer v. Commissioner*, 97 T.C. 555 (1991). In *Meyer v. Commissioner*, *supra* at 559, we observed that the Commissioner "can immediately assess and collect the addition to tax under section 6651(a)(1) * * * if such additions are determined (i.e., measured) by the amount of tax shown on the taxpayer's return". For one of the tax years at issue in that case, the Commissioner had summarily assessed an erroneous amount as an addition to tax under section 6651(a)(1). Subsequently, the Commissioner abated this erroneous assessment and included a

---

[8] In the context of a sec. 6212(a) notice of deficiency, we laid down a general rule of not looking behind the notice to determine its validity in *Greenberg's Express, Inc. v. Commissioner*, 62 T.C. 324, 327 (1974). We have adhered to this rule ever since. See *Pietanza v. Commissioner*, 92 T.C. 729, 735 (1989), affd. without published opinion 935 F.2d 1282 (3d Cir. 1991); *Riland v. Commissioner*, 79 T.C. 185, 201 (1982); *Estate of Brimm v. Commissioner*, 70 T.C. 15, 22 (1978). Also, in deciding whether the Commissioner has made a "determination" within the meaning of sec. 6212(a), we need only examine the face of the notice. See *Sealy Power, Ltd. v. Commissioner*, 46 F.3d 382, 388 n.25 (5th Cir. 1995), affg. in part and revg. in part T.C. Memo. 1992–168; *Clapp v. Commissioner*, 875 F.2d 1396, 1402 (9th Cir. 1989); *Campbell v. Commissioner*, 90 T.C. 110 (1988); cf. *Scar v. Commissioner*, 814 F.2d 1363 (9th Cir. 1987) (holding that because the face of the notice of deficiency revealed that the Commissioner had failed to make a "determination" within the meaning of sec. 6212(a), the notice was insufficient to confer jurisdiction on the Court), revg. 81 T.C. 855 (1983).

We extended these principles of limiting our gaze to a notice's surface to sec. 6330(d)(1)(A) notices of determination in *Lunsford v. Commissioner*, 117 T.C. 159, 164 (2001). In so doing, we overruled precedent holding that we must first look behind the determination to see whether a proper hearing was offered in order to have jurisdiction. See *Meyer v. Commissioner*, 115 T.C. 417 (2000), abrogated by *Johnson v. Commissioner*, 117 T.C. 204 (2001).

smaller amount as a section 6651(a)(1) addition to tax in a section 6212(a) statutory notice of deficiency.

We did not attempt to verify the accuracy of the smaller amount. Instead, we noted that the "inclusion of the additions to tax under sections 6651(a)(1) * * * in the deficiency notice * * * raises a jurisdictional question". *Id.* at 562. Even though the Commissioner had not challenged our jurisdiction, we did so sua sponte. "Having concluded that the additions to tax in question are not subject to the deficiency procedures, * * * [we ruled] on our own motion [to] dismiss this case for lack of jurisdiction and strike as it relates to" the amount of the section 6651(a)(1) addition to tax shown on the notice. *Id.* We refrained from looking behind the notice to consider whether the amount shown on the notice was the proper section 6651(a)(1) addition to tax. We do the same here with respect to the section 6230(a)(1) computational adjustment that does not need any partner-level determinations.

Finally, we note that if we were to hold otherwise, we would allow a taxpayer to proceed with a petition by assigning errors to a notice, even though adjudicating such errors would not require that we make partner-level determinations. Allowing taxpayers such a prepayment forum would circumvent congressional intent as expressed in section 6230(c) limiting a partner's relief from erroneous computational adjustments to a claim or suit for refund. Whether such a restriction is reasonable or just is for Congress to decide, and we believe it already has.[9]

### D. *No Partner-Level Determinations Needed*

The September 22, 2008, notice of deficiency made four discrete computational adjustments to petitioners' 2001 income tax liability, each of which purportedly "properly reflects the

---

[9] Compare sec. 6230(a)(3)(A) (using the phrase "request for *abatement*" (emphasis supplied) for seeking innocent spouse relief from "a liability that is attributable to any adjustment to a partnership item"), with sec. 6230(c)(1) (using the phrase "claim for *refund*" (emphasis supplied) for a claim made "on the grounds that * * * the Secretary erroneously computed any computational adjustment necessary * * * to apply to the partner a * * * decision of a [TEFRA partnership-level proceeding]"). See also *Ackerman v. United States*, 643 F. Supp. 2d 140, 146, 147–148 (D.D.C. 2009) (after confirming that "The critical question in this case is whether the term 'claim for refund' [in sec. 6230(c)(1)] requires that *payment be made before* the claim is filed", the court concluded "that Congress *purposely* used the term 'claim for refund' in section 6230(c). * * * It is unlikely * * * that Congress did not intend 'claim for refund' when it wrote 'claim for refund' in section 6230(c)." (Emphasis supplied.) (Citations omitted.)).

treatment under this subchapter of a partnership item". Sec. 6231(a)(6). These adjustments comprised: (a) Eliminating the $206 of dividend income reported on petitioners' 2001 Schedule B as income from RJT's Schedule K–1; (b) eliminating the $12,415 capital loss reported on petitioners' 2001 Schedule D, line 5, as a flowthrough loss from RJT's Schedule K–1; (c) eliminating the $81,040 investment expense deduction reported on Schedule A, Itemized Deductions, line 22, as a flowthrough deduction from RJT's Schedule K–1; and (d) eliminating the reported loss on liquidation of RJT reported on petitioners' 2001 Schedule D, line 1. [10]

All of these computational adjustments follow directly from the treatment of partnership items determined in the partnership-level proceeding, and none of them requires any partner-level determinations within the meaning of section 6230(a)(2) and section 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs.

### 1. *No Profit Motive Found; No Loss Allowed*

We begin with the following unremarkable twin propositions. The validity of each is readily apparent from the relevant Code sections, viewed in the light of the Commissioner's interpretive regulations and the gloss of our own precedent. First, if a TEFRA partnership-level proceeding determines that partnership activities were not engaged in with a profit motive, then for a given tax year a partner's distributive share of partnership income serves as an upper limit on that partner's distributive shares of partnership losses and deductions. [11] Second, if the partnership activities were deemed a sham, the partner may not claim a loss on liquidating any part of his partnership interest.

If an "activity is not engaged in for profit", section 183(b)(2) limits deductions attributable to that activity to "the gross income derived from such activity for the taxable

---

[10] These adjustments necessitated respondent's making the following accompanying changes to petitioners' individual tax liability, which are not deemed to constitute partner-level determinations under sec. 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs.: Decreasing petitioners' 2001 itemized deductions by $170,283 to eliminate the $81,040 investment expense deduction mentioned above and to reflect a higher "floor" for such deductions; and recomputing petitioners' 2001 alternative minimum tax.

[11] This excludes, pursuant to sec. 183(b)(1), "deductions which would be allowable * * * without regard to whether or not such activity is engaged in for profit", such as State and local taxes and casualty losses. No such deductions are at issue here.

year". "[T]he term 'activity not engaged in for profit' means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under * * * section 212." Sec. 183(c).

Though section 183 is limited on its face to "an individual or an S corporation", we have previously and repeatedly agreed with the Commissioner that "section 183 of the Code applies to the activities of a partnership, and the provisions of section 183 are applied at the partnership level and reflected in the partner's distributive shares." Rev. Rul. 77–320, 1977–2 C.B. 78; see also Rev. Rul. 78–22, 1978–1 C.B. 72 (holding that an individual engaged in the same economic activity both as a sole proprietor and as a partner is deemed to be engaged in two distinct activities for section 183 purposes). [12]

The two revenue rulings cited above predate TEFRA. However, section 301.6231(a)(3)–1(b), Proced. & Admin. Regs., makes it clear that their logic carries over to TEFRA and "The term 'partnership item' includes * * * whether partnership

---

[12] We have concurred with this reasoning and concluded that in a sec. 183 inquiry in a partnership context, "the profit motive analysis is made at the partnership level." *Antonides v. Commissioner*, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990); see also *Peat Oil & Gas Associates v. Commissioner*, 100 T.C. 271 (1993) (holding that motives of promoters and managers of partnership control a sec. 183 analysis), affd. sub nom. *Ferguson v. Commissioner*, 29 F.3d 98 (2d Cir. 1994); *Krause v. Commissioner*, 99 T.C. 132, 168 (1992) ("Whether activities of partnerships were engaged in with actual and honest profit objectives is analyzed at the partnership level."), affd. 28 F.3d 1024 (10th Cir. 1994); *Rosenfeld v. Commissioner*, 82 T.C. 105 (1984) (declaring irrelevant the intent of individual coowners for analyzing partnership's profit motive); *Surloff v. Commissioner*, 81 T.C. 210, 233 n.58 (1983) (stating that for sec. 183 purposes, "the partnership itself is the entity that is or is not in a trade or business").

We find unanimity among the various Courts of Appeals that have considered this issue, which have all held that a sec. 183 analysis for a profit motive in a partnership context is properly conducted at the partnership level. See *Copeland v. Commissioner*, 290 F.3d 326 (5th Cir. 2002), affg. in part and revg. in part on other grounds T.C. Memo. 2000–81; *Hill v. Commissioner*, 204 F.3d 1214 (9th Cir. 2000); *Underwood v. Commissioner*, 203 F.3d 836 (10th Cir. 2000).

However, we do detect a difference of opinion between at least two Courts of Appeals in how sec. 183 operates to disallow deductions claimed by a partner in a TEFRA partnership. The Court of Appeals for the Ninth Circuit has stated that sec. 183 directly "applies to partnerships despite the statute's failure to mention them." *Hill v. Commissioner*, *supra* at 1218. The Court of Appeals for the Fifth Circuit, on the other hand, has held "that the factors from I.R.C. § 183 are only tools for determining the requisite profit objective under I.R.C. §§ 162 and 174; deductions for partnership expenses are not allowed or disallowed directly under I.R.C. § 183 itself." *Copeland v. Commissioner*, *supra* at 335.

The preceding suggests that while the Court of Appeals for the Ninth Circuit would consider the disallowance of a deduction under sec. 183 a partnership item for TEFRA purposes, the Court of Appeals for the Fifth Circuit would treat it as an "affected item". This difference of opinion does not affect our conclusion regarding the absence of any need for partner-level determinations in this case. See *infra* notes 17 and 19.

activities have been engaged in with the intent to make a profit for purposes of section 183".

## 2. *Sham Partnership and Shamed Partner*

We recognize the analytical separability of a partner's intent in investing in the partnership from the partnership's intent in engaging in partnership activities. However, "We have never held that the mere presence of an individual's profit objective will require us to recognize for tax purposes a transaction which lacks economic substance." *Cherin v. Commissioner*, 89 T.C. 986, 993 (1987).

For a partner to claim a loss on liquidating his partnership interest, his underlying investment must have been "entered into for profit" within the meaning of section 165(c)(2). But if the partnership activities themselves were a sham, "then such niceties as whether * * * [the partner's investment] was 'primarily' for profit, or whether the test is an objective or subjective one are simply not involved." *Mahoney v. Commissioner*, 808 F.2d 1219, 1220 (6th Cir. 1987), affg. *Forseth v. Commissioner*, 85 T.C. 127 (1985); see also *Hoffpauir v. Commissioner*, T.C. Memo. 1996–41 (holding that "A taxpayer may not deduct * * * losses under section 165(c)(2) from a tax shelter which lacks economic substance, even if the taxpayer intended to make a profit.").

In other words, for an allowable loss on liquidating a partnership interest, each of the following is a necessary condition. The partner must have had a profit motive for investing in the partnership, and the partnership transactions themselves must not be devoid of economic substance. See *Illes v. Commissioner*, 982 F.2d 163, 165 (6th Cir. 1992) (formulating a two-part test for deducting investment losses in which "The threshold question is whether the transaction has economic substance. If the answer is yes, the question becomes whether the taxpayer was motivated by profit to participate in the transaction."), affg. T.C. Memo. 1991–449.

Even if the partner had acquired his partnership interest with the individual motive of making a profit, he may not deduct as losses any amounts invested in the partnership if the partnership activities were a sham. See *Illes v. Commissioner*, *supra* at 165; *Rose v. Commissioner*, 868 F.2d 851, 853 (6th Cir. 1989) (declaring that a "court will not inquire

into whether a transaction's primary objective was for the production of income or to make a profit, until it determines that the transaction is bona fide and not a sham"), affg. 88 T.C. 386 (1987); *Collins v. Commissioner*, 857 F.2d 1383, 1385 (9th Cir. 1988) (stating that "the court does not inquire into a transaction's primary objective until it determines that the transaction is bona fide, that is, not a sham"), affg. T.C. Memo. 1987–217. [13]

### E. *Conclusion*

In the related partnership-level proceeding here, *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05, the Commissioner had filed a motion for summary judgment on April 5, 2006. That motion asked the Court to sustain the determinations set forth in the FPAA including the claims

That the formation of RJT Investments X, LLC, the acquisition of any interest in RJT Investments X, LLC by Randall Thompson and any other partner, the purchase of offsetting positions on market-linked deposits, the transfer of offsetting positions on market-linked deposits, the purchase of assets and the distribution of assets had no business purpose, lacked economic substance, and *constituted an economic sham* for income tax purposes and *were not entered into for a profit motive* and therefore should be disregarded for income tax purposes. [Emphasis supplied.]

We granted this motion in its entirety in our order filed April 19, 2006.

Because we had concluded in the April 19, 2006, order that a profit motive was absent at the partnership-level, our subsequent decision filed June 6, 2006, disallowed all partnership-level deductions and losses. [14] That decision also

---

[13] See also *Marinovich v. Commissioner*, T.C. Memo. 1999–179; *Schafer v. Commissioner*, T.C. Memo. 1994–569; *Farmer v. Commissioner*, T.C. Memo. 1994–342; *Wright v. Commissioner*, T.C. Memo. 1994–288; *Daoust v. Commissioner*, T.C. Memo. 1994–203; cf. *Fid. Intl. Currency Advisor A Fund, LLC v. United States*, 747 F. Supp. 2d 49, 236 (D. Mass. 2010) (concluding as a matter of law that "Even if taxpayers invest in a partnership with the individual objective of making a profit, they are not entitled to deduct any amounts invested in the partnership as losses under Section 165(c)(2) if the partnership transactions are not entered into for profit", but going on to contend that applicability of sec. 165(c)(2) is an "affected item" and beyond the subject matter jurisdiction of a TEFRA partnership-level proceeding). Even assuming arguendo that applying sec. 165(c)(2) to limit a loss claimed on liquidating a partnership interest is an "affected item", its resolution does not require any additional factual partner-level determinations if the partnership-level proceeding had previously concluded that the partnership activities were an economic sham. See *infra* note 19.

[14] We acknowledge that neither our order filed Apr. 19, 2006, nor our decision filed June 6, 2006, in *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05, cited sec. 183. We note, however, that the redetermination of partnership items set forth in our June 6, 2006, decision is perfectly consistent with a sec. 183 analysis applied at the partnership level. We also note that

redetermined the partnership income to be zero,[15] while leaving undisturbed the allocation of all partnership items to petitioner husband.[16]

Our partnership-level holding that the partnership activities "were not entered into for a profit motive" is sufficient to deny petitioners any distributive shares of partnership deductions and losses on their individual tax return for tax year 2001.[17] Also, the partnership-level conclusion that partnership activities "constituted an economic sham" forecloses petitioners from claiming any loss on liquidating a partnership interest in a disregarded partnership.[18]

---

pursuant to sec. 6226(h): "If an action brought under this section is dismissed, * * * the decision of the court dismissing the action shall be considered as its decision that the notice of final partnership administrative adjustment is correct". The Commissioner's motion for summary judgment filed Apr. 5, 2006, had pointed out that "the practical effect of [petitioner's] calling no witnesses and being held to the issues and arguments raised in his issues memorandum means that there are no genuine issues that can be disputed at trial." That motion, granted on Apr. 19, 2006, had asked as ultimate relief "that the determinations of the Commissioner [set forth in the FPAA] be sustained." On the basis of the foregoing, we have presented above an explication of the findings and holdings of the partnership-level proceeding. Though both our Apr. 19, 2006, order and June 6, 2006, decision were terse, parsing and explicating their findings and holdings here does not, and cannot be construed to, constitute a partner-level determination.

[15] See *supra* note 3, pointing out that respondent has chosen not to include the $206 dividend amount in petitioners' taxable income for tax year 2001 as a nonpartnership item. We need not, and therefore do not, decide whether including this amount would have necessitated partner-level determinations. We note that ascertaining whether receipt of a dividend constitutes "qualified dividend income", as defined by sec. 1(h)(11)(B)(i), could, in certain circumstances, entail making partner-level determinations.

[16] "A court with which a petition is filed in accordance with this section shall have jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the notice of final partnership administrative adjustment relates, [and] *the proper allocation of such items among the partners*". Sec. 6226(f) (emphasis supplied).

[17] This case, absent a stipulation of the parties to the contrary, is appealable to the Court of Appeals for the Eighth Circuit, which does not appear to have decided whether deductions may be disallowed directly under sec. 183 at the partnership level. If the Court of Appeals were to do so by, for example, following *Hill v. Commissioner*, 204 F.3d at 1218, discussed *supra* note 12, it would obviate the need for any partner-level determinations. Even assuming arguendo that the Court of Appeals for the Eighth Circuit follows *Copeland v. Commissioner*, 290 F.3d at 335, discussed *supra* note 12, and treats the consequences of applying sec. 183 to the partnership as an "affected item", no partner-level determinations would be called for here. See *infra* note 19.

[18] Our Apr. 19, 2006, order granting respondent's motion for summary judgment may be construed as determining at the partnership level, and as a partnership item, the absence of a profit motive in "the acquisition of any interest in RJT Investments X, LLC by Randall Thompson". That order has now become "final" within the meaning of sec. 7481(a)(2)(A). This alone should suffice for concluding that no further partner-level determinations are needed here.

However, even if we assume that applying sec. 165(c)(2) to deny a loss on liquidating a partnership interest is an "affected item" to be determined in a partner-level proceeding, such a determination requires no further partner-level facts once the partnership activities have been deemed to lack economic substance. See *supra* note 13 and accompanying text; *infra* note 19.

Moreover, a partnership-level conclusion that the partnership "is disregarded for Federal income tax purposes", while leaving unchanged the allocation of all partnership items to petitioner

Continued

We arrive at these conclusions without the need for "partner level determinations" within the meaning of section 6230(a)(2)(A)(i). [19] Consequently, pursuant to section 6230(a)(1), we find ourselves without jurisdiction over petitioners' income tax deficiency. [20]

## II. *Jurisdiction Over Penalty*

Our June 6, 2006, decision in *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05, determined that an accuracy-related penalty applied at the partnership level. The June 6, 2006, decision had specifically and explicitly exercised subject matter jurisdiction over computing the partners' outside bases. [21] We had concluded that "RJT Investments X, LLC was a sham, lacked economic substance, and was formed and/or availed [of] to overstate artificially the basis of the interest of Randall Thompson in RJT Investments X, LLC in the amount of $22,006,759 for purposes of tax avoidance." On the basis of this finding of overstated outside basis, we had sustained "the 40-percent gross valuation misstatement penalty under section 6662(a), (b)(3), (e), and (h), I.R.C. * * * to any gross valuation misstatement resulting from adjustments of the above partnership items."

husband, effectively reduces the purported partnership to a "single-member disregarded entity". Cf. sec. 301.7701–3(a) and (b), Proced. & Admin. Regs. (providing in part that "unless the entity elects otherwise, a domestic eligible entity is * * * Disregarded as an entity separate from its owner if it has a single owner"). It is a truism that no loss can be recognized on liquidating a single-member disregarded entity.

[19] See *Callaway v. Commissioner*, 231 F.3d 106, 110 & n.4 (2d Cir. 2000) ("An example of an affected item that requires no further factual determination at the partner level * * * [is an] allowable deduction * * * which * * * depends on the partner's distributive share of the partnership income or loss. Determining the allowed deduction is a mathematical calculation and requires no further factual finding."), revg. on other grounds T.C. Memo. 1998–99. We are confronted in the instant case by, in effect, "a mathematical formula" that requires petitioner husband's distributive shares of partnership deductions and losses to be no higher than his distributive share of zero income. Further, the partnership-level finding of an economic sham causes sec. 165(c)(2) to eliminate, or set to zero, any claimed loss on liquidating the partnership interest.

[20] We are mindful that respondent has not spelled out the arguments that we have developed and relied upon to demonstrate the absence of a need for partner-level determinations. We are equally mindful, however, that we are engaged in exploring the outer limits of our subject matter jurisdiction. In conducting this exercise, we would be derelict in our duty if we were to rest solely on the parties' submissions. See *supra* note 6.

[21] In *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05, the partnership, through its tax matters partner, had filed a motion on Apr. 5, 2006, arguing in part that it "seeks an order from the Court that the Court's jurisdiction in this case * * * Excludes * * * Redetermining Randall Thompson's outside basis in" the partnership. We had denied that motion in its entirety in our order filed Apr. 19, 2006.

A. *"Out-Of-Sight" Outside Basis*

After the petition in this case was filed, the Court of Appeals for the D.C. Circuit issued its opinion in *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649, 655 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding on penalty issues 131 T.C. 84 (2008), in which it "rejected the Tax Court's conclusion that outside basis was a partnership item * * * [that] could * * * be determined in the partnership-level proceeding." On a direct appeal of that particular partnership-level proceeding, the Court of Appeals concluded that "the Tax Court lacked jurisdiction to determine outside basis * * * [and] to determine that penalties apply with respect to outside basis because those penalties do not relate to an adjustment to a partnership item." *Id.*

In a supplemental brief, petitioners urge us to heed the Court of Appeals for the D.C. Circuit and hold "that the penalty determination in a case like this does not relate to an adjustment to a partnership item, rather the penalty determination is a non-partnership item which must be determined with a Subtitle B statutory notice of deficiency."

B. *Estoppel by Any Other Name*

We withhold comment on how compelling the admonition by the Court of Appeals for the D.C. Circuit and the urging by petitioners may otherwise be and merely observe that both arrive too late for this case, where the partnership-level proceeding has already been concluded. Our June 6, 2006, decision in *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05, and its findings were affirmed, 491 F.3d 732 (8th Cir. 2007), and are now "final" within the meaning of section 7481(a)(2)(A). Petitioners may not, in this partner-level action, collaterally attack subject matter jurisdiction that we had previously exercised in the partnership-level pro-

ceeding.[22] The findings in that proceeding are no longer subject to review by this Court.[23]

"A valid jurisdictional judgment has preclusive effect, * * * even if erroneous." *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987); see also *Lambert v. Conrad*, 536 F.2d 1183, 1185 (7th Cir. 1976) (holding that "a court has jurisdiction to determine its jurisdiction; and once it has made that deter-

---

[22] "Under collateral estoppel, once an issue is *actually and necessarily determined* by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (emphasis supplied). While the reference to "a court of competent jurisdiction" might suggest that collateral estoppel presupposes valid subject matter jurisdiction, in fact the doctrine applies to preclude a subsequent challenge to subject matter jurisdiction. See *Carr v. District of Columbia*, 646 F.2d 599, 608 (D.C. Cir. 1980) (holding that "'When the question of the [rendering] tribunal's (subject matter) jurisdiction is *raised in the original action*, * * * there is no reason why the determination of the issue should not therefore be conclusive under the usual rules of issue preclusion.'" (quoting Restatement (second) of Judgments sec. 15, cmt. c at 154 (Tent. Draft No. 6, 1979) (emphasis supplied)).

Privity for invoking collateral estoppel is supplied by sec. 6226(c)(1) (specifying that "each person who was a partner in such partnership at any time during such year *shall be treated as a party to such action*" (emphasis supplied)).

[23] Collateral estoppel is usually invoked as an affirmative defense. Under Rule 39, "A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including * * * collateral estoppel". *Jefferson v. Commissioner*, 50 T.C. 963, 966–967 (1968), suggests that unless collateral estoppel is affirmatively pleaded, it is deemed waived. However, we have long held that we may raise collateral estoppel sua sponte. See, e.g., *Monahan v. Commissioner*, 109 T.C. 235, 250 (1997); *Fazi v. Commissioner*, 105 T.C. 436, 445 (1995).

More importantly, insisting that the Commissioner affirmatively plead collateral estoppel in every TEFRA partner-level action is an unworkable rule. It would necessitate that we assert jurisdiction even if only to preclude relitigating partnership items. This would defeat, by procedure, clearly enunciated legislative intent of attaining speed and symmetry at the partner level.

TEFRA represents in large part the codification of the collateral estoppel doctrine in the partnership context. See generally *Wolff v. Commissioner*, T.C. Memo. 1994–196 ("The implication here is that in pre-TEFRA proceedings a partner would not be collaterally estopped by the litigation involving another partner in the same partnership."), revd. on other grounds 148 F.3d 186 (2d Cir. 1998); H. Conf. Rept. 97–760, at 62 (1982), 1982–2 C.B. 600, 662 (noting that under pre-TEFRA law, "a judicial determination of an issue relating to a partnership item generally is conclusive only as to those partners who are parties to the proceeding"); Staff of Joint Committee on Taxation, General Explanation of the Revenue Provisions of the Tax Equity and Fiscal Responsibility Act of 1982, at 268 (J. Comm. Print 1982) (observing that before enactment of TEFRA, "Duplication of manpower and administrative and judicial effort was required in some cases to determine the aggregate tax liability attributable to a single partnership item. Inconsistent results could be obtained * * * with respect to the same item"). Requiring the Commissioner to affirmatively plead collateral estoppel in a TEFRA partner-level action to give preclusive effect to the prior findings and conclusions of a partnership-level proceeding would fatally undermine the basic premises of TEFRA—conservation of judicial effort and consistent treatment of all partners in the same partnership.

Secs. 6221, 6226(f), and 6230(c)(4) embody the codification of collateral estoppel with respect to the partnership-level adjudication of partnership items and penalties relating to adjustment of partnership items. Relitigating these items in a partner-level prepayment forum is, thus, statutorily estopped. Subject to the requirements of sec. 7422(h), a refund forum may be "allowed to assert any partner level defenses that may apply or to challenge the amount of the computational adjustment." Sec. 6230(c)(4).

mination, its decision is binding *unless reversed on appeal*" (emphasis supplied)).

### C. *Conclusion*

Pursuant to section 6230(a)(1), the penalty may be directly assessed as a computational adjustment, notwithstanding the need for partner-level determinations.[24] The issuance of a purported notice of deficiency cannot trigger deficiency procedures where none applies. See sec. 6230(a)(2)(A)(i); see also sec. 301.6231(a)(6)–1(a)(3), Proced. & Admin. Regs.

The Court has considered all of petitioners' and respondent's contentions, arguments, requests, and statements. To

---

[24] We note a potential ambiguity in the parenthetical phrase "other than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items" at the end of sec. 6230(a)(2)(A)(i). The parenthetical phrase carves out these penalties from the set of affected items requiring partner-level determinations that are *always* subject to deficiency procedures. Read without the parenthetical phrase, sec. 6230(a)(2)(A)(i) is explicit that deficiency procedures "*shall apply* to any deficiency attributable to * * * affected items which require partner level determinations". (Emphasis supplied.) Thus, one plausible reading of the impact of the parenthetical carveout is that deficiency procedures *never* apply to penalties relating to adjustments to partnership items. However, an equally plausible reading is that deficiency procedures *do not always* apply to these penalties; i.e., deficiency procedures may or may not apply to such a penalty. The latter construction would render elective a notice of deficiency that contains these penalties. Compare *supra* Discussion, pt. I.A., arguing against the electiveness of an affected items notice of deficiency with respect to the income tax deficiency shown on the notice. Under this "elective" construction, the validity of an affected items notice of deficiency pertaining to a sec. 6662 penalty relating to an adjustment to a partnership item would not be disturbed by a subsequent direct assessment of this penalty.

Because the statutory language is ambiguous, we turn to the regulations for guidance. See *Mayo Found. v. United States*, 562 U.S. \_\_\_\_, \_\_\_\_ , 131 S. Ct. 704, 713 (2011) (clarifying that the Commissioner's regulatory pronouncements are generally entitled to the standard of deference set forth in *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)).

The governing regulation for petitioners' tax year at issue, 2001, is sec. 301.6231(a)(6)–1(a)(3), Proced. & Admin. Regs. Unlike the statute, the regulation is unambiguous that "any penalty, addition to tax, or additional amount that relates to an adjustment to a partnership item *is not subject* to the deficiency procedures". (Emphasis supplied.) The regulation does not eliminate all "elective" phraseology, however; it provides that the penalty "*may* be directly assessed * * * following the partnership proceeding, based on determinations in that proceeding, regardless of whether any partner level determinations may be required." Sec. 301.6231(a)(6)–1(a)(3), Proced. & Admin. Regs. (emphasis supplied).

The word "may" retains the notion of a choice on the Commissioner's part. However, in its context in the regulation, following immediately after a clause that unambiguously rejects the applicability of deficiency procedures to a penalty, "may" seems to denote a different choice— not a choice between directly assessing a penalty and subjecting it to deficiency procedures, but instead a choice between directly assessing the penalty and not assessing it at all. The implication appears to be that the Commissioner may elect not to assess a penalty against a given taxpayer partner, and allow this partner to go penalty free, despite successfully defending the asserted penalty at the partnership level.

If the regulation governs, any affected items notice of deficiency showing a penalty relating to an adjustment to a partnership item is invalid. Despite having issued such a notice, the Commissioner can proceed with a direct assessment and collection of the penalty, limiting the taxpayer partner's recourse to a suit or claim for refund. See sec. 6230(c)(4) (stating that in such a refund claim or suit, "a partner shall be allowed to assert any partner level defenses that may apply" to the penalty).

the extent not discussed herein, we conclude that they are meritless, moot, or irrelevant.

To reflect the foregoing,

> *An order of dismissal for lack of jurisdiction will be entered.*

Reviewed by the Court.

COLVIN, HALPERN, VASQUEZ, THORNTON, and PARIS, *JJ*., agree with this majority opinion.

COHEN, *J*., concurs in the result only.

GUSTAFSON and MORRISON, *JJ*., did not participate in the consideration of this opinion.

––––––––––––––––––

GOEKE, *J*., dissenting: The final holding of the majority opinion is that we do not have jurisdiction because the notice of deficiency is invalid. I disagree with this conclusion. I conclude that I am unable to simply concur in the result because I believe we have jurisdiction. Because the parties have resolved the issue which I believe provides jurisdiction and the other issues were properly resolved in the prior partnership-level case, the jurisdiction issue has no practical effect on the resolution of this matter but rather only on the manner the resolution is documented. In future cases, I believe the question of jurisdiction presented here will not be so easily resolved and we will be forced to distinguish aspects of the precedent we create today.

Section 301.6231(a)(6)–1(a), Proced. & Admin. Regs., provides that "if a change in a partner's tax liability cannot be made without making one or more partner-level determinations", the deficiency procedures shall apply to the change(s). The issue of whether the change in a partner's tax liability which results from a partnership determination requires "one or more partner-level determinations" is acknowledged by the Chief Counsel of the Internal Revenue Service as a decision that creates "uncertainty". To account for this uncertainty the Chief Counsel has issued instructions that partners who have reported a loss as a result of the sale of a partnership interest or a distribution by a partnership will be issued affected items notices of deficiency. Chief Counsel Notice CC–2009–11 (Mar. 11, 2009). The present case is such

a situation, and it is clear the notice of deficiency in this case was not inadvertent.

When faced with similar notices of deficiency issued by the Commissioner to resolve the uncertainty of whether an issue requires partner-level determinations, I submit we should not find such notices of deficiency invalid. We should take jurisdiction to carefully resolve the uncertainty. This is not to say that the majority has not carefully resolved the present case, but the time and effort to address what is determined to be a jurisdictional issue in itself demonstrates the impracticality of the majority's approach. [1]

I believe we are legally incorrect in the holding that the notice of deficiency in the present case is invalid. The determination of invalidity rests on the restrictions contained in section 6230(a)(1), which, as the majority states, provides the deficiency procedures "shall not apply" to computational adjustments *except* where the deficiency is attributable to "affected items which require partner level determinations", in which case the deficiency procedures do apply. Respondent issued the notice of deficiency because he determined that it might be required pursuant to section 6230(a)(2)(A)(i). The present notice of deficiency was issued to resolve whether there is in fact a deficiency. It determines a deficiency for a specific year and is identified as a notice of deficiency. These are the elements of a valid notice. *Campbell v. Commissioner*, 90 T.C. 110, 115 (1988) ("The notice must advise the taxpayer that respondent has, in fact, determined a deficiency, and must specify the year and amount."). If a notice incorrectly determines a deficiency, we do not lose jurisdiction. See, e.g., *Neely v. Commissioner*, 115 T.C. 287 (2000). The majority finds that respondent's intentional determination of a deficiency is invalid and therefore this invalidates the notice of deficiency. This determination is not supported by the precedent the majority cites. This case is not based upon a clear error or inadvertent use of the deficiency procedures. Respondent clearly and intentionally determined a deficiency where the existence of a deficiency was uncertain. This describes the circumstances in our deficiency docket in general. After careful scrutiny of facts which were not apparent

---

[1] Petitioners filed their petition on Dec. 19, 2008. Respondent filed his motion to dismiss for lack of jurisdiction 1 year later on Dec. 2, 2009. After extended briefing and consideration, we are deciding on Dec. 27, 2011, that we lack jurisdiction.

from the face of the notice of deficiency and after a settlement reached by the parties, we now know that the amount of tax determined in the notice of deficiency was incorrect. However, our conclusion that the deficiency determined in the notice was incorrect does not invalidate the notice of deficiency. [2]

We should expect this issue to arise in the near future in the context of other complex partnership issues with complex partner-level computations. Have we now made the determination of the correct application of section 6230 in each of these cases a jurisdictional analysis? I hope not.

KROUPA, *J*., agrees with this dissent.

———————————

HOLMES, *J*., dissenting: I agree with part II of the majority opinion—that collateral estoppel precludes the Thompsons from relitigating the issues of whether outside basis is a partnership item and whether we had jurisdiction at the partnership level to sustain the 40-percent penalty for misstating it. I agree with part I of the opinion where it says that the "applicability or inapplicability of deficiency procedures under section 6230 is statutorily mandated" and that deficiency procedures either apply or don't apply, depending upon whether the deficiency is attributable to any affected items that require partner-level determinations. But I disagree with the majority's holding that the final computation of the Thompsons' income tax liability requires no partner-level determinations, which means that I also have to disagree with their decision to dismiss the Thompsons' entire case for lack of subject matter jurisdiction. I write separately because I fear that the majority's analysis of whether an "affected item requires partner-level determinations" is wrong, and will further muddy this already turbid TEFRA pond.

I.

The Commissioner's argument that we lack jurisdiction depends largely on the related partnership case, *RJT Invs. X, LLC v. Commissioner*, docket No. 11769–05 (June 6, 2006),

---

[2] As the majority writes in citing and quoting extensively from *Hannan v. Commissioner*, 52 T.C. 787 (1969).

affd. 491 F.3d 732 (8th Cir 2007). In that case we found that the Thompsons' partnership was "formed and/or availed to overstate artificially the basis of the interest of Randall Thompson in RJT Investments X, LLC in the amount of $22,006,759 for purposes of tax avoidance." We also upheld the penalties that related to those determinations—over the objections of RJT that we had no jurisdiction to do so—and entered decision in the case. The Eighth Circuit affirmed in *RJT Invs. X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007).[1]

After the partnership proceedings, the Commissioner issued a notice of deficiency which made four adjustments:

• Eliminating the $206 of dividend income reported on petitioners' 2001 Schedule B, Interest and Ordinary Dividends, as income from RJT's Schedule K–1;

• Eliminating the $12,415 capital loss reported on petitioners' 2001 Schedule D, line 5, as a flowthrough loss from RJT's Schedule K–1;

• Eliminating the $81,040 investment expense deduction reported on Schedule A, Itemized Deductions, line 22, as a flowthrough deduction from RJT's Schedule K–1; and

• Eliminating the reported loss on liquidation of RJT reported on petitioners' 2001 Schedule D, Capital Gains and Losses, line 1.

Partnerships don't pay income tax; partners do. This means that there has to be another step after a partnership case is over before the Commissioner can figure out an individual partner's tax bill. The Code calls this a "computational adjustment," which is just the bottom-line "change in the tax liability of a partner which properly reflects the treatment * * * of a partnership item." Sec. 6231(a)(6). To make computational adjustments, however, the IRS must follow certain procedures: Sometimes the IRS has to send each partner a notice of deficiency, sometimes the IRS can just directly assess each partner and send him a notice of computational adjustment, and sometimes the IRS has to do some combination of both. See sec. 6230(a); sec. 301.6231(a)(6)–1(a), Proced. & Admin. Regs.; see also *Napoliello v. Commissioner*,

---

[1] Although the Eighth Circuit affirmed our decision, it nowhere discussed whether we were right to hold that outside basis is a partnership item. See *RJT Invs. X v. Commissioner*, 491 F.3d 732 (8th Cir. 2007). The Eighth Circuit stated plainly that the only issues it was deciding were whether we had properly found RJT to be a sham and whether that determination should be made at the partnership level. *Id.* at 735.

655 F.3d 1060, 1063–1064 (9th Cir. 2011) (citing *Olson v. United States*, 172 F.3d 1311, 1317 (Fed. Cir. 1999)), affg. T.C. Memo. 2009–104.

Figuring out which adjustments fall into which baskets has proven to be a major legal problem. The Code's test is easy to state: When a computational adjustment is attributable to an affected item[2] that requires a determination at the partner level, the Commissioner has to send the partner a notice of deficiency, which gives him a chance to come to Tax Court before paying. See sec. 6230(a)(2)(A)(i). The regulation uses more words, but says the same thing: "[If] a change in a partner's tax liability cannot be made without making one or more partner-level determinations, that portion of the change in tax liability attributable to the partner-level determinations shall be made under the deficiency procedures". Sec. 301.6231(a)(6)–1(a)(1), Proced. & Admin. Regs. The Code and regulations also have a rule that when a partnership-level determination leads to a computational adjustment that does *not* require a partner-level determination, the Commissioner is to assess the increase in tax summarily, send the partner a notice of computational adjustment, and leave him to pay and sue for a refund: No ticket to Tax Court for him. See sec. 6230(a)(1); sec. 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs.

This makes a blurry line—between "items which require partner level determinations" and items which do not—a blurry line with jurisdictional consequences.[3] It's usually not a good idea to make jurisdiction this confusing, and courts have had to make do with what they can to try to make this cranny of the Code as clean as possible.

And that leads to this case. The majority concludes that all of the computational adjustments made in the notice of deficiency that the Commissioner sent to the Thompsons "follow directly from the treatment of partnership items determined

---

[2] Affected items aren't partnership items but are affected by partnership items. See sec. 6231(a)(5).

[3] The matter is profoundly ambiguous, and the Secretary should not view our Opinion as foreclosing the possibility that he could clear this area up much more efficiently through regulation than the Commissioner has been able to do through litigation. As we pointed out in *Tigers Eye Trading, LLC v. Commissioner*, T.C. Memo. 2009–121, he may be en route to doing so. See Notice of Proposed Rulemaking, 74 Fed. Reg. 7205 (Feb. 13, 2009) (proposing section 301.6231(c)–9, Proposed Proced. & Admin. Regs., which would allow the Commissioner, upon notice, to convert all partnership items of an abusive tax shelter partnership to nonpartnership items, thereby routing partner- and partnership-level disputes through a single deficiency proceeding).

in the partnership-level proceeding, and none of them requires any partner-level determinations within the meaning of section 6230(a)(2) and section 301.6231(a)(6)– 1(a)(2), Proced. & Admin. Regs."

I disagree. Remember the list of the four changes the Commissioner wanted to make to the Thompsons' tax bill after *RJT Investments* was over:

- Eliminating the $206 of dividend income from RJT's Schedule K–1;
- Eliminating the $12,415 capital loss from RJT's Schedule K–1;
- Eliminating the $81,040 investment expense deduction from RJT's Schedule K–1; and
- Eliminating the reported loss on liquidation of RJT from the Thompson's Schedule D.

The fourth item stands out—why's the Commissioner eliminating an item from the individual partner's tax return when that item doesn't appear on the partnership's own return?

A.

The majority says that we can go ahead and eliminate it anyway because we've decided in *RJT Investments* that the partnership was a sham, and no one can take a loss in disposing of an interest in a sham partnership.[4] I don't disagree. But it doesn't quite answer the jurisdictional question that we have—does a taxpayer get to come to our Court to learn this lesson, or does he have to go to a refund court to hear the same bad news?

Finding the correct (or at least a better) answer, I think, begins with a look at what it was exactly that the Commissioner did after *RJT Investments* was over. In *RJT Investments* we held that the Thompsons' outside basis was a partnership item and determined it to be zero,[5] so the Commis-

---

[4] Or to put it in more sophisticated language, the consequence of determining a partnership to be a sham is to say that the rules of subchapter K don't apply. This means we disregard the partnership as an entity separate from its partners, and treat the assets of the disregarded partnership as if they were owned directly by the purported partners.

[5] Since the Eighth Circuit's decision in *RJT Investments*, the D.C. and Federal Circuits have held that there's no jurisdiction at the partnership level to determine a partner's outside basis in a partnership because it's an affected item, not a partnership item. See *Jade Trading, LLC v. United States*, 598 F.3d 1372 (Fed. Cir. 2010), affg. in part, revg. in part, vacating in part

Continued

sioner made a conforming change to the Thompsons' return. He issued them a notice of deficiency in which he adjusted their outside basis in RJT to zero. This certainly made the treatment of outside basis at the partner level consistent with its treatment at the partnership level.[6] This particular adjustment doesn't involve any partner-level determinations—section 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs., tells us that "substituting redetermined partnership items for the partner's previously reported partnership items * * * does not constitute a partner-level determination."

The problem is that merely zeroing out the Thompsons' outside basis doesn't get the Thompsons their correct tax liability. That's why the Commissioner's computational adjustment was off—he skipped a partner-level step.

The notice of deficiency zeroed out the Thompsons' outside basis by substituting zero for the more than $22 million basis that they had reported, and then increasing their taxable income by $22,006,759 of "Short-Term Capital Gain/Loss." Although the $22,006,759 amount does appear on the Thompsons' return, that was not the amount of the loss that they reported for the disposition of their interest in RJT:

| Description of property | Date acquired / date sold | Sale price | Cost or other basis | Gain or (loss) |
|---|---|---|---|---|
| Liquidation of RJT Invest- ments X, LLC | 10/12/01 12/21/01 | $986,759 | $22,006,759 | ($21,020,000) |

Stipulation of Facts, Exhibit 2–J. As one can see from this exhibit, their claimed loss was $21,020,000. This means that the Commissioner ended up converting the Thompsons' fictional loss into a fictional $986,759 gain.

It's not that the Commissioner had the correct mathematical formula and just made a math error. As we explained in *Huffman v. Commissioner*, 126 T.C. 322, 344–345 (2006), affd. 518 F.3d 357 (6th Cir. 2008), there is a distinction between a "mathematical error" and omitting a step that requires math. Mathematical or clerical errors gen-

---

and remanding in part 80 Fed. Cl. 11 (2007); *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 131 T.C. 84 (2008).

[6] Although I do not believe—certainly after two circuits have both ruled the same way—that we had jurisdiction over outside basis at the partnership level, the Thompsons are collaterally estopped from attacking our contrary decision in their case.

erally include typographical mistakes, or errors in addition, subtraction, multiplication, or division. See sec. 6213(g)(2). If the computational adjustment was incorrect only because the Commissioner made a mathematical or clerical error while applying the correct mathematical formula, then I would agree that it wouldn't require any partner-level determinations within the meaning of section 6230(a)(2)(A)(i). [7]

But in this case, the Commissioner also needed to make another adjustment—either reducing the Thompsons' reported sale price for RJT from $986,759 to zero, or reducing their reported short-term capital gains to zero, or both. Neither the sale price (which, I acknowledge, was nothing more than the return of most of the cash that the Thompsons put into the deal) nor the short-term loss is anywhere to be found on RJT's return.

This becomes a bigger problem after the Courts of Appeals' decisions in *Jade Trading* and *Petaluma*, with their holdings that outside basis isn't even a partnership item. See *Jade Trading, LLC v. United States*, 598 F.3d 1372 (Fed. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 80 Fed. Cl. 11 (2007); *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d 649 (D.C. Cir. 2010), affg. in part, revg. in part, vacating in part and remanding in part 131 T.C. 84 (2008). Without the benefit of collateral estoppel, would we be able to hold that the disallowance of a loss like this one can be made without a partner-level determination, when outside basis, the sale price, and the resulting loss are nowhere on the partnership's return?

### B.

The problem springs from an ambiguity in the phrase "affected items which require partner level determinations." The Code doesn't define "determinations" or "requires", and the majority doesn't try to do it either. But a minute's reflection suggests that there are at least two plausible readings of the phrase. The first is one that construes the phrase to

---

[7] See *Bush v. United States*, 655 F.3d 1323 (Fed. Cir. 2011) (holding that when the IRS simply has to perform mathematical calculations—i.e., plug numbers into a formula—to determine a partner's tax liability, it is a computational adjustment that does not require further determinations at the partner level); *Gosnell v. United States*, 107 AFTR 2d 2011–2748, 2011–2 USTC par. 50,488 (D. Ariz. 2011) (finding that no partner-level determination was needed because the substitution of a forty-percent penalty and disallowance of out-of-pocket costs required only mathematical calculations).

read "affected items which require *legal or factual* partner-level determinations." If this reading is the better one, then deficiency procedures apply to a computational adjustment that requires any question of fact or law to be decided at the partner level before the Commissioner can make the computational adjustment.

A second reading is one that construes the phrase to read "affected items which, *on the facts of this particular case,* require partner-level *factual* determinations." The majority adopts the second reading, but without discussing any alternative.[8]

One problem with this reading is that determinations aren't just factual—it's well settled that determinations can be legal, factual, or some combination of both.[9] Section 301.6231(a)(3)–1(b), Proced. & Admin. Regs., also contemplates this when it explains that a "'partnership item' includes * * * legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc."

The term "determination" refers to deciding something's nature or outcome. See *Terminal Wine Co. v. Commissioner*, 1 B.T.A. 697, 701 (1925) (stating that a determination is "the final decision by which the controversy as to the deficiency is settled and terminated, and by which a final conclusion is reached relative thereto and the extent and measure of the deficiency defined").[10] "By its very definition and etymology the word * * * irresistibly connotes consideration, resolution, conclusion, and judgment." *Scar v. Commissioner*, 814 F.2d

---

[8] Words in a statute generally must be interpreted according to their ordinary, everyday meaning. See, e.g., *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993). We should only adopt a "restricted rather than a literal or usual meaning of its words where acceptance of that meaning would * * * thwart the obvious purpose of the statute." *Commissioner v. Brown*, 380 U.S. 563, 571 (1965). As I illustrate *infra* part I.C., the majority's limited construction of the word "determinations" in fact thwarts the obvious purpose of TEFRA.

[9] See, e.g., *Smith v. Massachusetts*, 543 U.S. 462, 468 (2005) (noting a distinction between "legal rather than factual determination[s]" with regard to certain criminal procedural safeguards); *Fid. Intl. Currency Advisor A Fund v. United States*, 661 F.3d 667 (1st Cir. 2011) (noting that the trial court made various factual and legal determinations with regard to disallowed digital option transactions); *Napoliello v. Commissioner*, 655 F.3d 1060, 1065 (9th Cir. 2011) (rejecting petitioner's contention that section 301.6231(a)(3)–1(b), Proced. & Admin Regs., encompasses only accounting items and the factual and legal determinations underpinning the same), affg. T.C. Memo. 2009–104.

[10] See also Rule 155(a) ("Where the Court has filed or stated its opinion determining the issues in a case, it may withhold entry of its decision for the purpose of permitting the parties to submit computations pursuant to the Court's determination of the issues showing the correct amount to be included in the decision.").

1363, 1368 (9th Cir. 1987) (citing *Terminal Wine Co.*, 1 B.T.A. at 701).

I can't say that the majority's reading is without support in our caselaw. It comes from our decision in *N.C.F. Energy Partners* and cases that apply its holding. See *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741 (1987), superseded by statute on other grounds;[11] see also *Callaway v. Commissioner*, 231 F.3d 106, 110 (2d Cir. 2000), revg. T.C. Memo. 1998–99; *Adkison v. Commissioner*, 129 T.C. 97, 102 (2007), affd. 592 F.3d 1050 (9th Cir. 2010); *Crowell v. Commissioner*, 102 T.C. 683, 689 (1994); *Carmel v. Commissioner*, 98 T.C. 265, 268 (1992); *Woody v. Commissioner*, 95 T.C. 193, 202 (1990); *Dial, USA, Inc. v. Commissioner*, 95 T.C. 1, 6 (1990).

In *N.C.F. Energy Partners* we noted the distinction between affected items requiring only a computational adjustment that can be directly assessed and those subject to subsequent deficiency proceedings. 89 T.C. at 743–744. Although we said that affected items are subject to deficiency procedures if they require factual determinations at the partner level, we did not use "factual" in any way that implied that we were saying that affected items are not subject to deficiency procedures if they require "legal" determinations at the partner level. See *id.* at 744.[12]

Look again at what the majority is doing in its opinion— it is making a legal determination that the Thompsons may not claim any loss at the partner level from the liquidation of their partnership interest because we held in *RJT Investments* that the partnership was an economic sham.[13] This is

---

[11] Before the 1997 amendments, TEFRA provided for the determination of all penalties at the partner level. See *N.C.F. Energy Partners v. Commissioner*, 89 T.C. 741, 744–745 (1987). This is because penalties imposed on a partner because of an adjustment to a partnership item are "affected items." But amendments to TEFRA in 1997 changed this structure and provided for the determination of some penalties at the partnership level.

[12] The example we gave in *N.C.F. Energy Partners* of an affected item requiring deficiency procedures—the addition to tax for negligence pursuant to section 6662(b)(1) (former section 6653(a))—is itself one that requires both factual findings and also a legal determination that (i) the facts are sufficient to establish negligent disregard for tax rules and regulations and (ii) that no exception or excuse applies. 89 T.C. at 744–745.

[13] By way of analogy: Where a taxpayer has previously been convicted of a crime involving tax fraud, such as criminal tax evasion under section 7201, he is collaterally estopped from denying the existence of fraud with regard to any civil penalties the Commissioner asserts under section 6663. See, e.g., *DiLeo v. Commissioner*, 96 T.C. 858, 885 (1991), affd. 959 F.2d 16 (2d Cir. 1992). We don't lose jurisdiction despite the lack of triable factual issues with regard to imposing the fraud penalty, but rather find for the Commissioner based upon collateral estoppel, making a *legal* determination that the civil fraud penalty applies. See, e.g., *Williams v. Commissioner*, T.C. Memo. 2009–81; *Anderson v. Commissioner*, T.C. Memo. 2009–44.

a legal determination because it resolves a question of law—namely, whether anyone in the Thompsons' situation is entitled to claim such a loss. See *McCarthy Trust v. Commissioner*, 817 F.2d 558, 559 (9th Cir. 1987) (stating that when the parties do not dispute the substance of the transaction, "Application of the Internal Revenue Code * * * is a question of law"), affg. 86 T.C. 781 (1986). But it's a legal determination that the majority's making at the partner level without even realizing it [14]—after all, in *RJT Investments*, we didn't and couldn't redetermine the Thompsons' reported loss from the liquidation of their interest in RJT at the partnership level because it wasn't a partnership item [15] or a penalty that related to an adjustment to a partnership item. See sec. 6226(f) (laying out our partnership-level jurisdiction). The Thompsons' loss is an affected item that must be determined (i.e., allowed or disallowed) at the partner level. See *Petaluma FX Partners, LLC v. Commissioner*, 591 F.3d at 655.

The determination in *RJT Investments* that RJT is a sham is certainly the determination of a "partnership item," but the effect this has on the Thompsons' claimed capital loss from the disposition of their interest in RJT is nevertheless one step removed from the partnership level. It seems such an easy step to take, but the conclusion that the Thompsons can't claim a loss on disposition of RJT is a low-hanging fruit that we shouldn't be touching at the partnership level: It's an affected item that requires a determination at the partner level (no matter how obvious or easy it seems) before the Commissioner can pluck, peel, and eat it.

The sham determination only indirectly affects the loss reported by the Thompsons for the liquidation of their interest in RJT, and doesn't just flow through to the partners'

---

[14] In note 18, the majority concludes: "[E]ven if we assume that applying sec. 165(c)(2) to deny a loss on liquidating a partnership interest is an 'affected item' to be determined in a partner-level proceeding, such a *determination* requires no further partner-level facts once the partnership activities have been deemed to lack economic substance." Majority op. note 18 (emphasis added).

[15] Section 6231(a)(3) defines "partnership item" as "[(A)] any item required to be taken into account for the partnership's taxable year under any provision of subtitle A[, (B)] to the extent regulations prescribed by the Secretary provide that, for purposes of this subtitle, [(C)] such item is more appropriately determined at the partnership level than at the partner level." Partnership items include factors that affect the determination of partnership items such as the "legal and factual determinations that underlie the determination of the amount, timing, and characterization of items of income, credit, gain, loss, deduction, etc." Sec. 301.6231(a)(3)–1(b), Proced. & Admin. Regs.

returns as a numerical adjustment. This is consistent with our holding in *Petaluma* on remand. 135 T.C. 581, 587 (2010). In that Opinion, we held that a sham determination only indirectly affects outside basis at the partner level. *Id.* We also held that the sham determination didn't flow through to the partners' returns as a numerical computational adjustment. *Id.*

Plus, the Thompsons' loss from the liquidation of their interest doesn't look like the kind of affected item the regulations say can be adjusted without any partner-level determinations. Section 301.6231(a)(6)–1(a)(2), Proced. & Admin. Regs., says:

> Changes in a partner's tax liability with respect to affected items that do not require partner-level determinations (such as the threshold amount of medical deductions under section 213 that changes as the result of determinations made at the partnership level) are computational adjustments that are directly assessed.

This regulation tells us that exemptions, credits, and deductions that have percentage limitations based on the taxpayer's adjusted gross income are types of affected items that don't require partner-level determinations—it's something anyone with a calculator can do as a math chore without the need for any fact finding or even simple legal analysis at the partner level.

I also think that it's important to consider, when thinking about whether a computational adjustment requires partner-level determinations, whether a partner had the opportunity at the partnership level to dispute all issues of law and fact that will affect the computational adjustment. See *Randell v. United States*, 64 F.3d 101, 108 (2d Cir. 1995). Otherwise we may see cases like the Thompsons' again in a collection due process proceeding.[16] See *Manko v. Commissioner*, 126 T.C. 195 (2006).

---

[16] Once the Commissioner assesses a tax, he is allowed to collect any unpaid portion of it by filing liens against, and levying on, a taxpayer's property. The Code allows taxpayers a collection due process hearing before the IRS can use a lien or levy to collect the unpaid taxes. See secs. 6320, 6330. We have jurisdiction to review the Commissioner's determinations after such hearings. Our review of the Commissioner's determinations in cases like the Thompsons' would be *de novo*, inasmuch as the partner never received a notice of deficiency or had the opportunity to dispute his underlying tax liability. See *Grunsted v. Commissioner*, 136 T.C. 455, 458 n.4 (2011); *Prince v. Commissioner*, 133 T.C. 270, 274 (2009); *Lindberg v. Commissioner*, T.C. Memo. 2010–67.

C.

It's true, as the majority points out in note 5, that the Ninth Circuit didn't "reach the question of whether the notice of deficiency would be invalid if no partner-level [factual] determination[s] were necessary." *Napoliello*, 655 F.3d at 1064 n.1. But the Ninth Circuit also noted that such a "proposition would deprive taxpayers of procedural safeguards were we to adopt it." *Id.* I fear that the majority's construction of "determinations" won't work well and will lead to results contrary to TEFRA's purpose.

This case shows us how that might happen—the majority's approach deprives the Thompsons of a prepayment forum to challenge the Commissioner's disallowance of the loss. Maybe that doesn't make a lot of difference in this case—it's hard to see how the Thompsons would care about whether we have jurisdiction because (if we did have jurisdiction) we'd exercise it to disallow their loss and find them collaterally estopped from disputing the penalty at issue.

But taking a case to conference usually means that we think it should be analyzed for its effects on tax law more generally. Our holding today, I suggest, means that in future cases we will need to conduct a case-by-case analysis as to whether a particular taxpayer's reported loss on the liquidation of his partnership interest could be adjusted in a notice of computational adjustment or only in a notice of deficiency. This kind of individualized case processing would, I fear, defeat a major purpose of TEFRA. Congress has always made it clear that "[p]artnership proceedings under rules enacted in TEFRA, must be kept separate [and distinct] from deficiency proceedings involving the partners in their individual capacities." H. Conf. Rept. 105–220, at 677 (1997), 1997–4 C.B. (Vol. 2) 1471, 2147; see also *Maxwell v. Commissioner*, 87 T.C. 783, 788, 793 (1986). This is not only clear from the legislative history, but also from the Code itself. Secs. 6221, 6226(f), 6230, 6231. Congress tried to draw a thick line between partnership-tax matters and all other tax items of the partners—presumably for administrative efficiency. See *Maxwell*, 87 T.C. at 793.

A case-by-case patrolling of the border between affected items that do and don't require partner-level factual determinations only increases the probability that the IRS's bulk-

processing employees will make what we will later call a mistake. What happened after *Petaluma* illustrates this problem: The IRS released Chief Counsel Notice CC–2009–11 on March 11, 2009, because it was uncertain as to how a reviewing court would classify particular items. The notice instructs the IRS to issue both a notice of deficiency and a notice of computational adjustment for the same items and amounts. Our decision today only complicates matters. Not wanting to blow the statute of limitations, the Commissioner will protect the Treasury by doubling the notices in every case and forcing the courts to decide each one. This is a necessary consequence of blurring general distinctions to be more precise in individual cases. It's not a development we should encourage.

The majority's construction of affected items subject to deficiency proceedings as only those requiring partner-level factual determinations also threatens to cause inconsistent treatment between partners. When we require each partner to litigate the issue of whether computational adjustments require partner-level factual determinations, we risk treating partners of the same partnership differently even in our Court. (And refund courts may also disagree with our characterization of computational adjustments that can be directly assessed.)

A computational adjustment relating to a loss reported by a partner on the liquidation of his interest is just the type of item that should be routed through deficiency procedures because it may require partner-level factual determinations, and will always require a partner-level legal determination. In similar cases there might be factual questions raised by the Commissioner's treatment of, for example, the other components that a partner considered in computing his claimed loss (e.g., the cash or property he received from the disregarded partnership). And in all such cases the computational adjustment for the loss will require a partner-level legal determination on the effects of the partnership-level proceeding. An individual partner's loss on disposition of his partnership interest cannot be determined at the partnership level. We therefore should assert jurisdiction at the partner level, because correctly redetermining the loss will generally require us to answer questions of both law and fact. I believe

this is a permissible construction of section 6230(a)(2), and one that we should have adopted.

## II.

### *Conclusion*

The silt we stir today will cloud the cases we plunge into tomorrow. I respectfully dissent.

KROUPA, *J.*, agrees with this dissent.